C. R. MAXWELL v. FRED G. SMITH, *et ux.*

161 So. 566.
Division B.
Opinion Filed May 18, 1935.
Rehearing Denied June 5, 1935.

*Marion M. Brooks,* for Appellant;
*George C. Simpson,* for Appellees.

ELLIS, P. J.—The appellant, Maxwell, appealed from a final decree entered by the Judge of the Circuit Court for Dade County, Honorable Paul D. Barns presiding, on July 12, 1934, in a certain foreclosure proceeding in which Maxwell was complainant and the appellees, Fred G. Smith and his wife, Elsie N. Smith, were defendants.

The defense interposed by the defendants, mortgagors, was that the transaction culminating in the execution of the note for four thousand dollars and the mortgage upon

certain land in Miami was tainted with usury, in that the actual amount of money loaned was $3,600; that a note was executed for four thousand dollars, dated June 21, 1927, bearing eight per cent. interest per annum from date, and that from December 21, 1927, to and including April 2, 1932, the defendants have paid to complainant sixteen hundred dollars by way of interest; that adding to that sum the amount of four hundred dollars reserved by the complainant the defendants had been required to pay two thousand dollars interest for the use of thirty-six hundred dollars for a period of four years and nine months and eleven days. In addition to that sum the complainant desired to credit the defendants on their alleged indebtedness an account which the defendant has against complainant amounting to $87.84 according to complainant's admissions in the bill of complaint, but which account amounts to $91.50 according to defendants' contention.

Testimony was taken by a Special Master who was directed to report testimony and his findings. The Master reported that he found that the defendants had failed to establish their defense of usury and that there was due from the defendants to the complainant the sum of four thousand seven hundred and forty-six dollars principal and interest upon which defendants were entitled to a credit of eighty-seven dollars and eighty-four cents.

Exceptions were taken to the Master's report and findings that the complainant had proved all the material allegations of the bill; that the defendants had failed to establish the defense of usury and that there was a debt due by defendants to complainant of the amount stated. It was also contended that the findings of the Master were contrary to the evidence. The exceptions to the report were made June 4, 1934, and on the 28th day of that month the Circuit

Judge sustained the exceptions and on July 12th, 1934, entered the final decree from which the appeal was taken.

The Chancellor found the equities to be with the defendants; that the money actually advanced was $3,600.00, and that the plaintiff reserved and exacted a usurious sum of two thousand dollars which the Chancellor by his order doubled and forfeited and declared a balance of four hundred dollars due to the defendants from the complainant. The decree ordered the mortgage to be cancelled.

The question here arises upon the facts disclosed by the evidence. The complainant amended the bill after answer filed in which he alleged that prior to the date of the mortgage Smith was indebted to Maxwell in the sum of $1,797, evidenced by two notes, one for the sum of $797.00 made by Arthur S. Meyerson and indorsed by defendant and one for $1,000.00 made by Harry Dubler and indorsed by the defendant; that defendant was also indebted to complainant prior to the execution of the mortgage in the sum of $3,000.00 secured by a mortgage on real estate; that Smith, desiring to secure a "construction loan" requested the complainant to take a mortgage for $4,000.00 on the property described in the bill and release the mortgage for $3,000.00. It was alleged that complainant agreed to accept that proposition provided defendant would agree to allow complainant to apply $400.00 on the Meyerson note for $797.00 and $600.00 on other obligations of the defendant due or to become due; that such agreement was carried out.

The defendant answered that amendment by averring that he did transfer the notes to complainant, but denied that the notes constituted any obligation of the defendant or that the complainant had ever made any demand on the defendant for payment of them and denied that either note was an indebtedness of his.

Thus the transaction was submitted to the Court upon the testimony offered by the parties. If the transaction was as simple as the complainant contended, that is, that four hundred dollars of the alleged four thousand dollar indebtedness were to have been used by defendant to pay the complainant a pre-existing debt or to be applied on such a debt, which would have relieved the transaction of all suspicion of usury, it could have been clearly established by a receipt to the defendant for that amount and a written statement that the money should be so applied. But that frank, open and ingenuous way of transacting the business the complainant evaded, and to all appearances retained the four hundred dollars as well as the total of the alleged indebtedness of $1,797.00 against the defendant upon the notes on which the complainant now asserts that the defendant was liable.

Instead of establishing at the time of the transaction the true character of the agreement, as the complainant alleges it to have been, he proceeds to foreclose the mortgage, makes no allegation in the original bill as to the true character of the transaction, as he now asserts it to be, and waited until the defendant answered and four months after the original bill was filed to explain by amendment to the bill how the four hundred dollars were applied and why.

The Court now is called upon to unravel the intricate web of alleged verbal agreements and understandings supposed to have existed between the parties at the time and administer law and equity between them.

The Chancellor's findings and his decree thereon are amply sustained by the evidence in the case. There is nothing existing in the record on which it may be said that he clearly erred in his conclusions. In fact, we are of the opinion that his findings and decree were just and equitable

and in accord with the evident true nature and character of the transaction.

Such being the situation the Court, pursuant to a long line of decisions, should refuse to disturb the decree. See Fulton v. Clewiston, 100 Fla. 257, 129 South. Rep. 773; Sandlin v. Hunter Co., 70 Fla. 514, 70 South. Rep. 533; Hill v. Beacham, 79 Fla. 430, 85 South. Rep. 147; Farrall v. Forest Inv. Co., 73 Fla. 191, 74 South. Rep. 216, 1 A. L. R. 25; Smith v. O'Brien, 75 Fla. 252, 78 South. Rep. 13; Coogan v. Burley, 92 Fla. 899, 110 South. Rep. 529; Woodruff v. Lantana Finance Corp. 102 Fla. 950, 136 South. Rep. 712; Turnipseed v. Brown, 102 Fla. 542, 136 South. Rep. 343.

The method used by the complainant to exact from the defendants a sum of money amounting to a compensation greater than ten per cent. per annum upon the sum actually loaned was a scheme, device or contrivance whereby the inhibitions of the statute were sought to be evaded. See Secs. 6938 and 6939 C. G. L. 1127.

The Chancellor correctly applied the rule of law defined by the statutes to the facts as he found them to exist. The decree should therefore be affirmed.

Affirmed.

TERRELL and BUFORD, J. J., concur.

WHITFIELD, C. J., and BROWN, J., concur in the opinion and judgment.

DAVIS, J., dissents.

DAVIS, J. (dissenting).—My view is that the Special Master correctly decided this case on the law and the facts and that the Chancellor erred in sustaining exceptions to the Master's report recommending a decree for complainant.