MRS. JESSE SEWELL JONES, *et vir*, v. WARREN HAMMOCK, *et ux.*, and GULF REFINING COMEANY.

179 So. 674.

Opinion Filed November 4, 1937.

Petition for Rehearing Dismissed March 24, 1938.

322

*M. B. Hilton* and *B. M. Skelton,* for Appellants;

*C. E. Ware,* for Appellees.

BROWN, J.—This is an appeal from a final decree cancelling a mortgage on the ground of usury. The Court held that the bonus and interest charged and paid amounted to more than 10 per cent., and that when such usurious interest was doubled and forfeited under the statute, it exceeded the principal sum loaned.

Prior to July 1, 1927, Appellees, Warren Hammock and Julia R. Hammock, his wife, through their agent, advertised for a $7,000.00 loan on certain property in Pinellas County, Florida, offering to pay a reasonable commission. In response to this application, appellants offered to make a loan to said appellees of $5,000.00 for three years at 8 per cent. and a bonus of 5 per cent., or $250.00. The loan secured by mortgage was made through attorneys representing appellants on the 21st day of July, 1927. The semi-annual interest payments were paid. On the 1st day of July, 1931, the interest on the old mortgage was paid up to date and a new mortgage was given by appellees, Warren Hammock and Julia R. Hammock, his wife, to appellants

in satisfaction of the old mortgage. This was made at a time when said appellees had sold a filling station and approximately 43/100 of an acre of the ground covered by the mortgage, at which time said appellees had to satisfy the old mortgage and clear everything up to that date. At the time of the sale, the purchasers of the filling station and the 43/100 acres of land, McKeithen & Ulmer, gave said appellees a note and a second mortgage for the excess in the purchase price as security that they would pay appellants' mortgage. By this transaction the appellees, Warren Hammock and Julia R. Hammock, his wife, made a prospective profit of approximately $4,000.00. But later on the purchasers, not being able to pay, conveyed the property back to Hammock. On the 21st day of January, 1933, the said appellees were in the act of making a lease with the Gulf Refining Company and desired an extension of the time of payment of the mortgage given July 1, 1931, by them to appellants, and in order to accomplish said purpose, were given an extension of said mortgage for five years from the 1st day of March, 1933, and specifically agreed in said paper that nothing contained herein should invalidate in any manner the security then held for the said debt, and appellees specifically ratified and confirmed their mortgage and note, and again promised and agreed to continue with the faithful performance of all of the conditions thereof. This situation continued until about February, 1935, when for the first time the appellees discovered that there had been usury in the original transaction back in 1927 to the amount of $25.00. In the meantime, they had taken back from McKeithen and Ulmer the property sold to them by appellees. They thereupon started the present suit on the 20th day of February, 1935, seeking a decree of the lower court declaring that the mortgage executed on July 1, 1931, was usurious and asking that the amount

of interest claimed to have been paid on the mortgage executed July 19, 1927, and the interest paid on the mortgage executed July 1, 1931, be doubled and charged against the mortgagees; that the appellants' note and mortgage be satisfied and that any overcharge be decreed to be paid to appellees, Warren Hammock and Julia R. Hammock, his wife.

The first question argued is: Are lenders proven guilty of willfully violating usury laws of the State of Florida by proving that they unknowingly accepted a sum in excess of the amount allowed by law for a loan?

This Court has held that one of the requisites of a usurious transaction is that there must exist a corrupt intent to take more than the legal rate for the use of money loaned (Clark v. Gray, *et al*, 132 So. 832, 101 Fla. 1058) and that usury is largely a matter of intent and is not fully determined by the fact of whether the lender actually gets more than the law permits, but whether there was a purpose in his mind to get more than legal interest for the use of his money. (Benson v. First Trust and Savings Bank, 105 Fla. 135, 134 So. 493.) Also to work a forfeiture under the statute the principal must knowingly or willfully charge or accept more. than the amount of interest prohibited. Chandler, *et ux.,* v. Kendrick, 108 Fla. 450, 146 So. 551-2. A perusal of the evidence establishes clearly that there was no intent on the part of the appellants to exact any usury of the defendants and there was likewise no idea or intent on the part of the appellees that usury was being exacted from them, or in fact that there had been 'any usury in the transaction. Warren Hammock's testimony is that he did not discover that there was any usury in the transaction until he became disgruntled at Jesse Sewell Jones, one of the defendants, in the year 1935, because of something which transpired in said appellee's place of business; that up until that time

he did not know that anything was wrong with the transaction. Mrs. Jones testified that she came to Florida about 1926; that she had received some money from life insurance of which she was the beneficiary; that she had made but two loans, one to the appellees, and the other to Warren Hammock's brother. She decided to make the loan and went to her attorneys. Her attorneys made out the checks and she signed them. She never knew there was any contention by Mr. Hammock that the loan was improper until January, 1935, when this suit was brought; that she had not up until that time known the rate of interest on this loan and that she did not know the loan was in excess of 10%; that she left the transaction to her attorneys, Cummings & Earle; that she left everything with her attorneys.

It would therefore appear that the element of intent in this transaction was entirely lacking and as evidence of the good faith of both of the parties, it is fair to say that the evidence indicates that neither of them had any idea or intent of evading the usury laws in any manner whatsoever, or in charging in excess of 10%. It is apparent from the record that the appellant, Mrs. Jesse Sewell Jones, did not know that the interest rate exceeded 10% until she was called on the phone by appellant's attorney in the early part of 1935, and Mr. Hammock did not realize that there was any usury involved in the transaction until very shortly before that time. In Clark v. Gray, *et al.,* 101 Fla. 1058, 132 So. 832, it is said:

"There are four requisites of a usurious transaction: There must be a loan, express or implied; and understanding between the parties that the money lent shall be returned; that for such loan a greater rate of interest than is allowed by law shall be paid or agreed to be paid, as the case may be; and there must exist a *corrupt intent* to take more than the legal rate for the use of the money loan.

Illegal taint can be purged or eliminated, however, in either of two ways: First, by a renewal of the note or contract, after it has passed into the hands of a *bona fide* purchaser for value, without notice of the usury; secondly, by a reformation of the contract, by which the usurious interest is expunged by remitting the excess, and only lawful interest is retained or exacted."

In Chandler, *et ux.,* v. Kendrick, 108 Fla. 450, 146 So. 551, it is said:

"The very purpose of statutes prohibiting usury is to bind the power of creditors over necessitous debtors and prevent them from extorting harsh and undue terms in the making of loans. Under the law and the decisions, usury is a matter largely of intent. It is not fully determined by the fact of whether the lender actually gets more than the law permits, but *whether there was a purpose in his mind* to get more than legal interest for the use of his money, and whether, by the terms of the transaction and the means employed to effect the loan, he may by its enforcement be enabled to get more than the legal rate. Benson v. First Trust & Savings Bank (Fla.) 142 So. 887; R. C. L. pp. 223, 224.

"A thing is willfully done when it proceeds from a conscious motion of the will, intending the result which actually comes to pass. It must be designed or intentional, and may be malicious, though not necessarily so. 'Willful' is sometimes used in the sense of intentional, as distinguished from 'accidental,' and, when used in a statute affixing a punishment to acts done willfully, it may be restricted to such acts as are done with an unlawful intent. Clark v. Gray, 101 Fla. 1058, 132 So. 832; United States v. Boyd (C. C.) 45 F. 851, text 855; State v. Clark, 29 N. J. Law, 96.

"To work a forfeiture under the statute, the principal must knowingly and willfully charge or accept more than the amount of interest prohibited by it. The evidence shows that Kendrick was an unsophisticated woodsman, and had no purpose whatever of charging more than the amount actually loaned, with 8 per cent. interest, that Chandler was a banker and a business man of experience, that the terms of the contract originated with Chandler, that Kendrick never intended to charge nor did he ever claim but the $7,250.00 actually loaned, * * *"

It is pertinent to observe that this is not a defensive action by mortgagors who are being sued in an attempt to enforce the amount of their obligation, but to the contrary it is an offensive action by the parties who borrowed the money, that is, the mortgagors, against the persons from whom they borrowed the money, in the proof of which action they admit that they knew nothing of the usurious character of the transaction until approximately seven and one-half years after the obligation was by them incurred, during which period of time they had received numerous accommodations from the persons lending money to them and during which time they had sought a new mortgage in satisfaction of their old one and had thereafter procured for their own accommodation an extension of their new mortgage for five years, and by virtue of that extension had been aided in making a sale wherein they had prospective profits of approximately $4,000,00, as well as the payment of several hundred dollars of interest on the mortgage debt paid by the parties who assumed it.

This Court has held in an action where usury was interposed as a defense, in Benton v. Wilkins, 118 Fla. 491, 159 So. 518, that:

"Defense of usury, where interposed to avoid or defeat obligation to pay money, must be established by .clear and satisfactory evidence."

This brings us· to the question before the Court as to whether or not lenders are proven guilty of willfully violating the usury laws when the only proof is that they accepted ,a $250.00 bonus for a three year eight per cent. loan of $4,750.00 on a note and mortgage for $5,000.00, which was allowed to run for a year after maturity and subsequently renewed by means of a new note and mortgage for the same amount for three years, which was later extended for five years more. The court below held that as the excess above ten per cent. interest, by reason of the bonus of $250.00, was a mere matter of calculation, by so doing they were guilty of willfully violating the usury laws regardless of their protestations and proof, not only that it was not done willfully, but that they did not even know that they were charging more than ten per cent. The chancellor's language indicated that he reached this conclusion with considerable reluctance. By calculation it appears that the excess for usury in this case amounts to but $25.00 over the three year period. In other words, if Mrs. Jones had by either acceptance or demand charged a bonus of $225.00, it would have been legal. As it was, she accepted $25.00 more than was allowed by statute, but without actually knowing that this raised the interest rate to a fraction over 10% for the three years. And if the new mortgage of 1931 could be considered as a renewal or extension of the old mortgage, and relating back thereto, then the bonus of $250.00 as applied to the full period of time covered by both mortgages would not render the loan usurious, regardless of intent.

The statute, Section 6939, Comp. Gen. Laws of Florida, by its terms applies to persons "willfully violating" Section.

6038, which section forbids the charging of a rate of interest greater than 10 per cent. This Court in the case of Chandler, *et ux.*, v. Kendrick, hereinbefore referred to, specifically held that to work a forfeiture under the statute, the principal must knowingly and willfully charge or accept more than the amount of interest prohibited by the statute. In that case, Kendrick was an unsophisticated woodsman, as in this case the appellant actually furnishing the money was and is, as we judge from her testimony, an educated yet unsophisticated woman who has made but two loans in the State of Florida, the present loan, and one to the brother of Warren Hammock, and clearly from the testimony, as in the Kendrick case, had no purpose in charging more than the legal rate of interest. This fact is further established by proof that after deciding to make the loan, she did not even handle the transaction, but permitted her lawyer to make out the checks which she signed.

Our attention is directed to pages 39 and 40 of the transcript, which is the agreement entered into on the 21st day of February, 1933, at which time the appellees, Warren Hammock and his wife, Julia R. Hammock, were making a lease of part of the property involved in this action with the Gulf Refining Company, and which paper recites that it is the desire of the said appellees to extend the time of payment of the indebtedness for five years from the 1st day of March, 1933, that is, to make the original loan made in July, 1927, continue until March, 1938. At the time of seeking this extension, the said appellees agreed that in consideration of the further extension of time they would pay appellants the sum of $5,000.00 together with interest as provided in the note and specifically covenanted that nothing contained in said agreement should invalidate the security held for said debt, and ratified and confirmed the original mortgage and note and promised and agreed to

continue with the faithful performance of all of the conditions of the original mortgage and note as they were modified by the agreement. It was a new agreement as to maturities which appellants were under no obligation whatsoever to make. They gained nothing by it, although appellees, Warren Hammock and his wife, Julia R. Hammock, were thereby enabled to make a lease with the Gulf Refining Company which they did make. By this modification the loan was allowed to extend over a period of approximately eleven years. This agreement imposed a new obligation on the part of both appellants and appellees in so far as the time of payment was concerned. Thus the original contract was twice renewed from time of original transaction, in which through inadvertence, or possibly misapprehension of appellants' lawyers, they did charge $25.00 more than, under the statute, they should have charged for a three year loan. This was done at a time when some of our courts were laboring under possibly the same misapprehension as the lawyers here evidently were, because it was not until the case of Sullivan v. Thummn, 101 Fla. 1412, 136 So. 439, a Pinellas County case, decided by this Court in 1931, that this Court definitely decided that the deductions to be made under the statute should be made from the actual sum loaned and not the fictitious sum stated on the face of the mortgage and note.

The defendants, in their amended answer, filed by leave of Court specifically raised the question that the alleged cause of action of the plaintiffs did not accrue within two years prior to the filing of the bill of complaint. The bill of complaint was filed February 20, 1935. If there was usury in the transaction, it originated at the time of making the original loan which was on the 21st day of July, 1927. The second loan or the mortgage made in satisfaction of the first mortgage was made on the 1st day of July, 1931.

We recognize the rule that such a limitation is not necessarily binding upon a Court of Equity. But there is also a rule that in the absence of contrary equities, a Court of Equity may follow the law. 21 C. J. 195-198. The limitation governing this action, if it were in law, is Section 4663, Comp. Gen. Laws, sub-paragraph 6:

"Within Two Years.—An action by another than the State upon a statute for a penalty or forfeiture; * * *"

Thus this, if brought as an action at law to recover the forfeiture of double the interest in excess of the amount loaned, would be an action by another than the State strictly involving a forfeiture and a penalizing of the lender. If the people of Florida, through their Legislature, determined that a person other than the State of Florida, bringing such an action on the law side of the Court, should bring it within a period of two years, the question arises, would it not be reasonable to hold that a Court of Equity should not only, as an equitable principle, but as a matter of right, follow the same limitation, where justice and equity require it? But it is hardly necessary to decide that question here. At least, these considerations indicate that there is a showing here of gross *laches*.

In addition to what may be the law applicable, equity would indicate that the appellees should not be allowed to take advantage of this situation, of which they were ignorant just the same as the appellants were ignorant; that it is unjust that the appellees should have the use of appellants' money from July, 1927, until February, 1935, before raising this question, and after the lapse of approximately seven and one-half years, the appellees should be barred from asserting their charge in an attempt not only to take away from appellants their original loan, made to appellees in good faith and received by them in the same manner, but also attempt to require appellants to pay to them double the

amount of the interest on the obligation, to the extent that this exceeds the sum originally loaned. It was probably in recognition of this principle, in part at least, that the lower court refused to do more than cancel plaintiff's mortgage. It did not charge defendants with the excess doubled. The proof substantiated the answer that the action did not accrue within two years prior to the filing of the bill.

If the appellees had brought their suit when or before the original mortgage fell due, on the same theory as the present suit, they could not have claimed anything like as much as they did by waiting for seven and a half years and then claiming a forfeiture of double the amount of the interest accruing over the longer period. But by getting Mrs. Jones to renew and extend the original note and mortgages they claim a forfeiture which wipes out the mortgage entirely and leaves Mrs. Jones owing the Hammocks some thirteen hundred dollars. Thus Mrs. Jones' considerate treatment of the borrowers has, if the decree below stands, worked her own undoing.

Our conclusion is that on the facts of this case, the plaintiffs in the court below did not successfully carry the burden which rested upon them to prove that the defendant, Mrs. Jones, willfully, and intentionally charged the plaintiff more than ten per cent. for the use of the money borrowed by him, and if it was not "willfully" done the statute (Sec. 6939) was not violated.

While the facts here are not exactly the same, we think this case falls within the principle laid down in the case of Chandler v. Kendrick, *supra.*

If the principle underlying the final decision on rehearing in the case of Benson v. First Trust & Savings Bank, 105 Fla. 135, 142 So. 887, were applied here, it is doubtful if there would be any usury, regardless of intent, in a loan of this kind, such as would work the forfeitures claimed in

view of the fact that by way of a renewal note and mortgage and an extension, the loan had run for seven and a half years before any question of usury was raised. It was held in that case that where usury is charged, the amounts recoverable should be determined, not from the time the mortgagee took advantage of the acceleration clause by filing foreclosure suit, but as of the date of the foreclosure decree, which holding spread out the time to which the bonus payment was applicable in such a way as to save the forfeiture of both principal and interest. If the bonus charged by Mrs. Jones in this case was spread out over the period that the loan had actually run, or had been extended to it, together with the eight per cent. interest, would have amounted to considerably less than ten per cent. But we do not need to invoke that principle here. Neither of the parties knew, or willfully intended, that more than ten per cent. should be charged.

We cannot believe that the Legislature, by the statute here involved, ever intended any such unjust result as the decree below would inflict, on such a state of facts as those presented in this case.

The decree appealed from is accordingly reversed with directions to dismiss the bill.

WHITFIELD, TERRELL and CHAPMAN, J. J., concur.

ELLIS, C. J., and BUFORD, J., dissent.

BUFORD, J. (dissenting).—This is an appeal from a final decree finding usury to exist in a certain note and mortgage, the renewal and the extension thereof, and applying the statutory penalty to the lender by ordering the note and mortgage, the renewal and extension thereof cancelled of record.

In response to a newspaper advertisement, Mrs. Jesse Sewell Jones, on July 21, 1927, loaned to Warren Ham-

mock and Julia R. Hammock the sum of $4,750.00 taking therefor their note in the sum of $5,000.00, due in three years, bearing interest at the rate of 8%, secured by a mortgage of even date on the following described premises:

"The South Half of the Southeast Quarter of the Southwest Quarter of the Southeast Quarter of Section 5, Township 30 South, Range 15 East."

The record does not show any extension or renewal of this note and mortgage at the end of that three year period. However, on July 1, 1931, complainants gave Mrs. Jesse Sewell Jones a new note for $5,000.00, due in three years, bearing interest at the rate of 8%, secured by a mortgage on the same property, in satisfaction of the note and mortgage of July 21, 1927. Simultaneously therewith complainants deeded 43/100 of an acre of said mortgaged property to McKeithen and Ulmer, taking back a second mortgage thereon to secure the purchase price, which mortgage was placed in escrow for the benefit of Mrs. Jesse Sewell Jones, so that all payments made by McKeithen and Ulmer on said mortgage would be paid to Mrs. Sewell Jones.

Having later defaulted in payment of the purchase price, McKeithen and Ulmer deeded the 43/100 of an acre of the mortgaged property back to complainants.

Thereafter Mrs. Jesse Sewell Jones entered into a contract with complainants whereby the due date on the note and mortgage executed July 1, 1931, was extended for five years from March 1, 1933. The consideration for said contract was the written assignment to Mrs. Jessee Sewell Jones of the income from a lease of even date of 43/100 of an acre of mortgaged premises to the Gulf Refining Co., said rent to be applied in payment of interest on the principal obligation owed by complainants to Mrs. Jones.

Payments of rent by the Gulf Refining Co. under the assignment of rent agreement continued until the latter part of January or the first part of February of 1935.

On February 20, 1935, complainants filed their bill of complaint against Mrs. Jesse Sewell Jones, Jesse Sewell Jones and the Gulf Refining Co., asking for an accounting; and praying that the court credit on said note and mortgage the sum of $6,979.76, being double the amount of the bonus and interest collected and reserved; that the court cancel said note and mortgage and each renewal and extension thereof; and that the court enter judgment in favor of complainants for the sum of $1,763.60, being the difference between the amount to be credited on said note and mortgage because of usury penalties, and the sum of $4,750.00 actually loaned.

The amended bill of complaint filed May 22, 1935, in addition to the foregoing, also prayed that the Gulf Refining Co. be enjoined from paying any further sums of money to Mrs. Jesse Sewell Jones; and that the contract theretofore made providing for the assignment to Mrs. Jesse Sewell Jones of rent paid by the Gulf Refining Co. be cancelled.

Mrs. Jesse Sewell Jones and Jesse Sewell Jones answered the bill of complaint, denying the material allegations thereof, and asserting in defense to the allegations of the bill that in making the loan Mrs. Jesse Sewell Jones acted on advice of counsel that the loan would not be usurious; that the transaction of July 1, 1931, amounted to a novation; that defendants were ready and willing to accept payment of the principal of the mortgage; and that Jesse Sewell Jones had no interest in the note or mortgage and prayed that he be discharged from the suit.

The amended answer set up the defense that the alleged cause of action did not accrue within two years prior to the filing of the bill of complaint.

Testimony was taken before Hon. T. Frank Hobson, Circuit Judge, by Hon. B. E. Satterfield, Official Court Reporter.

Final hearing was had before Hon. John U. Bird, Circuit Judge, who found that Mrs. Jesse Sewell Jones knowingly and intentionally charged complainant $250.00 bonus and 8% interest upon the sum of $5,000.00 for the use of $4,750.00 for three years, which is more than the law permitted said sum to earn; that it is possible she did not know the bonus plus 8% interest violated the law, or what the law was, yet the law charges her with knowledge of the statute; that the sum retained and the interest contracted for exceeded the 10% allowed by law is a simple matter of calculation; that though the facts may make the remedy seem harsh, yet the law is plain and mandatory; that the equities are with the complainants; that the interest paid by complainants to Mrs. Jesse Sewell Jones together with the sum of $250.00 retained as bonus, when doubled as required by statute, more than equals the sum of $4,750.00 loaned; that there is no element of estoppel or *laches* proven by defendants.

The court thereupon decreed that the mortgage of July 20, 1927, with each renewal and extension thereof was usurious; that complainants have paid to Mrs. Jesse Sewell Jones and the latter has charged, reserved and collected from complainants as interest and bonus on the aforesaid usurious mortgage, renewal and extension thereof, between July 20, 1927, and February 7, 1935, the sum of $3,256.80; that Mrs. Jessee Sewell Jones forfeit to complainants double said amount or the sum of $6,513.60; that the assignment of rent by complainants to Mrs. Jesse Sewell Jones

of February 21, 1933, is void for want of valid consideration, and because based upon usurious consideration; that the renewal mortgage of July 1, 1931, and the extension agreement of February 21, 1933, are each cancelled and set aside; that the Gulf Refining Co. is permanently enjoined from paying to defendants, Jesse Sewell Jones or Mrs. Jesse Sewell Jones, any sums of money under the assignment of rent agreement of February 21, 1933; that any rents held by the Gulf Refining Co. by virtue of a temporary restraining order heretofore issued are the property of complainants, and the Gulf Refining Co. is hereby authorized to disburse the same to complainants or their solicitor of record.

From the final decree Mrs. Jesse Sewell Jones and Jesse Sewell Jones took an appeal, assigning fourteen errors.

Complainants cross-assigned as error the failure of the court to enter a money judgment in their favor against Mrs. Jesse Sewell Jones.

It is contended by appellants that there was not sufficient proof that they, the lenders, *willfully* violated the usury laws of the State of Florida.

"There are four requisites of a usurious transaction: '(1) There must be a loan, express or implied; (2) an understanding between the parties that the money lent shall be returned; (3) that for such loan a greater rate of interest than is allowed by law shall be paid or agreed to be paid as the case may be; and (4) there must exist a corrupt intent to take more than the legal rate for the use of the money loaned.'" Clark v. Gray, 101 Fla. 1058, 132 So. 832, quoting from Ector v. Osborne, 179 N. C. 667, 103 S. E. 388, 13 A. L. R. 1207.

It was admitted by Mrs. Jesse Sewell Jones that she entered into a contract to lend complainants money; that she knew that she took complainants' note and mortgage for $5,000.00 for a three year loan, bearing interest at the rate

of 8%, and actually loaned complainants only $4,750.00, reserving $250.00 as bonus. It is a simple matter of calculation to ascertain that the interest reserved by way of bonus and that actually paid was in excess of 10% per annum for the three year period. Mrs. Jones knew what the terms of the contract were, and she may be presumed to know what interest rate per annum was reserved and paid for the three year period.

There were no circumstances in this case similar to those in the case of Chandler v. Kendrick, 108 Fla. 450, 146 So. 551, so that the rule laid down there might be invoked here. The lender, Mrs. Jones, had her attorneys draw up the papers, and she admitted that she had an education above the average, which is quite different from the facts existing in the case of Chandler v. Kendrick, *supra,* where the borrower, a man skilled in financial matters, drew up the papers for the lender, an ignorant backwoodsman, in such manner that the contract called for interest in excess of 10% per annum.

"A thing is willfully done when it proceeds from a conscious motion of the will, intending the result which actually comes to pass. It must be designed or intentional, and may be malicious, though not necessarily so. 'Willful' is sometimes used in the sense of intentional as distinguished from 'accidental,' and when used in a statute affixing a punishment to acts done willfully, it may be restricted to such acts as are done with unlawful intent." Chandler v. Kendrick, 108 Fla. 450, 146 So. 551.

The provision of the statute, Sec. 6939 C. G. L., requiring that Sec. 6938 be *willfully* violated before the penalty can be enforced, contemplates that the lender must know that the interest and bonus that is being reserved and contracted to be paid in excess of 10% per annum; but it does not contemplate that the lender must know that charging and re-

serving interest and bonus in excess of 10% per annum is a violation of the usury laws of the State. If a lender could be permitted to say that he knew he was charging in excess of 10% interest, but didn't know that by doing so he was violating the law, it would open the doors to great fraud to be perpetrated by lenders upon borrowers. Ignorance of the law is no excuse when the lender is charged with violating the usury statutes of this State. Neither is acting on advise of counsel, that the transaction is not usurious, a valid excuse on the part of the lender. See Carr v. Cole, 119 Fla. 260, 161 So. 392. There is ample evidence in the record to show that the lender knew the facts of the transaction, and it is immaterial whether she knew the law on the subject or not.

The second question presented is whether it is incumbent on borrowers to prove that the usury statutes of the State were willfully violated.

It was decided by this Court in the cases of Tucker v. Fouts, 73 Fla. 1215, 76 So. 130; McCullough v. Hill, 105 Fla. 680, 133 So. 846; Phillips v. Lindsay, 102 Fla. 835, 136 So. 666, that a defendant setting up the defense of usury had the burden of proof, which is the burden of proving the four essential elements heretofore set out in this opinion. The same rule also applies where a complainant is relying upon usury to maintain his bill of complaint. We think this burden was successfully met by complainants in the instant case. The Chancellor so found and we are unwilling to disturb that finding.

The third and sixth questions presented relate to the same proposition and will be disposed of together. They raise the question as to whether the renewal note and mortgage given July 1, 1931, amounted to a novation so as to purge the contract of usury; and whether the extension, by

sealed instrument, of the due date of said renewal for five years from March 1, 1933, purged the contract of usury.

"Where a usurious contract is renewed by the giving of ·a substituted contract, the usury follows into and becomes a part of that contract making it subject to the defense of usury to the same extent as was the original obligation. Such a renewal is regarded as a shift or device through which the lender seeks to collect his usury, and the courts are active to frustrate the attempt." 27 R. C. L. 250, Sec. 54, and cases cited.

Section 6938 C. G. L. provides that "any contract, contrivance or device whatever, whereby the debtor is required or obligated to pay a sum of money greater than the actual principal sum received, together with interest at the rate of ten per cent." is unlawful and usury.

By the original contract between the parties, the borrowers were obligated to pay to 'the lenders the sum of $5,000.00 at the end of a three year period, and pay 8% interest on that amount during that period of time, whereas the borrowers only received and had the use of $4,750.00. This clearly violated the statute, Sec. 6938, C. G. L., and the contract was usurious. Then on July 1, 1931, a renewal note and mortgage were made for the same amount, to-wit, $5,000.00, bearing the same rate of interest, to-wit, 8%, and payable in three years.

"Though the security for a debt is tainted with usury it may be purged by the abandonment of the usurious contract and the execution of a new obligation for the amount of the actual debt free from the usury of the old and bearing only legal interest. If the lender will expurge the usury, and borrower voluntarily assents to repay the sum loaned with law interest, it is an act of justice forbidden by no principle of public policy, which constitutes a good consideration for a new contract." 27 R. C. L. 251, Sec. 55.

See also DeWolf v. Johnson, 102 Wheat. 367, .6 L. Ed. 343, and Clark v. Gray, 101 Fla. 1058, 132 So. 832.

However, there was in the renewal note and mortgage no reduction in the amount of principal to conform with the amount of money actually received by the borrowers, nor was any effort made to repay to the borrowers the amount reserved as bonus at the inception of the contract. Consequently, the fictitious sum of $5,000.00, having contributed towards rendering the first contract usurious, carried with it the stigma of usury into the second or renewal contract, rendering that contract also usurious. The extension of the due date of the renewal contract for five years from March 1, 1933, was, for the same reason, also usurious.

The fourth question presented is whether the statute of limitations has barred complainants from setting up usury in this transaction.

The statute of limitations does not begin to run on usury until the maturity of the contract. It operates in the same manner as it does on an installment contract or a running account. Hagan v. Neeb, 105 Fla. 297, 140 So. 916. The last payment of interest on this contract having been made in January or February of the same year in which the bill of complaint was filed, the statute of limitations had not barred complainants from setting up usury in the transaction.

It is also contended that the principle of estoppel precludes the borrowers from setting up usury.

The Chancellor below found that there was no element of estoppel in the case to prevent complainants from asserting that there was usury in the contract. We agree with that conclusion of the Chancellor.

It is contended by the appellees that the Chancellor erred in failing to enter a money judgment in favor of the borrowers for the difference between double the amount of the

interest paid and reserved and the amount of money actually loaned, when double the amount of the interest paid and reserved exceeded the sum of money actually loaned.

The Chancellor found that complainants had paid as interest to Mrs. Jones the sum of $3,256.80, which being doubled, amounted to $6,513.60. The Chancellor further found that the actual amount of money lent to complainants by Mrs. Jones was the sum of $4,750.00. If the latter sum is deducted from the former, it will leave a balance due to the borrowers of $1,763.60. The Chancellor, after ordering the cancellation of the note and mortgage together with the renewal and extension thereof, failed to enter a money judgment in favor of the borrowers for the difference between double the amount of the interest actually paid and the amount of money actually lent. In failing to enter a money judgment in favor of the borrowers for this difference, the Chancellor below erred. See Maxwell v. Smith, 119 Fla. 389, 161 So. 566.

ELLIS, C. J., concurs.