ALLEN, Judge.
The appellee, as plaintiff in the lower court, filed an action on April 7, 1959, on a promissory note dated April 1, 1957, in the principal amount of $3,929.74 with interest at 6% for the first year and 10% thereafter until paid. The plaintiff was the assignee of the note which was executed by John A. Brown, as maker, with O. T. Kindel as payee.
A jury trial resulted in a verdict for the plaintiff of $3,929.77 plus interest of *305 $823.78, with the additional sum of $38.50 for costs, making a total verdict of $4,-792.02.
The trial judge ordered a remittitur of $67.12, which order the plaintiff complied with.
The relations between Kindel and Brown had existed for many years. Kindel held two notes as payee which had been executed by Brown and, as of August 4, 1949, there was an apparent balance of principal and interest due of $4,184. Brown paid Kindel $2,000, leaving a balance of $2,184 as of August 4, 1949. Each of these two notes bore 6% interest the first year and 10% thereafter until paid.
On April 1, 1957, Kindel went to Brown’s place of business with a prepared new note for Brown to sign to replace the two notes above referred to. This note was in the sum of $3,929.74 dated April 1, 1957, with interest at 6% for the first year and 10% thereafter until paid. Brown signed the note and, at the request of Kindel, went to the back of the building to get his wife to sign. She refused and he returned to his desk at the front of the building, and laid the note on his desk informing Kindel of his wife’s refusal.
There is a conflict in the evidence as to whether or not this new note was ever delivered to Kindel by Brown and is one of the two points of law involved in this case.
The other question involved was stated by the appellant as follows:
“Is a note for $3,929.74, dated April 1, 1957, to evidence the renewal of a conceded obligation of $2,184.00 as of August 4, 1949, a usurious note under the statutes of the State of Florida,- and is a subsequent verdict of $3,929.74 principal and $823.78 interest, or a total of $4,753.52, a verdict arising out of a usurious transaction?”
Reverting to the question of delivery first, we shall quote from the testimony reflected in the appendix of the appellant’s brief. Kindel, in response to the judge’s questions, stated:
“Q. When you went to get this note signed in the bakery shop, he signed it first, I believe you said, and then he took the other two notes and tore them up? A. That is correct.
“Q. When did you ask him to have his wife sign it — before he did or after he did? A. After he tore up the other two notes and after he signed this note.
“Q. Then you told him — or asked him to see if he could get his wife to sign it? A. Yes, sir.
“Q. What did he say, if anything, to that? A. He gets up and goes out and goes into the back of the bakery and has a talk with her.
“Q. Did he bring the note with him? A. No, he left it lying on the desk.
“Q. Were you both on the same side of the desk, or you on one side and him on the other? A. Both on the same side.
“Q. He came back out? A. Back in the office.
“Q. What, if anything, did he say about his wife’s signature? A. He said she refused to sign.
“Q. He said she refused to sign it? A. Yes.
“Q. What, if any, conversation took place between you two at that time? A. I don’t remember any at all.
“Q. Then what transpired ? A. He turned and walked back into the bakery.
* * * * * *
“Q. Where was the note at this time ? A. Lying there on the desk.
*306 “Q. And then you picked up the note and went — and left ? A. That is right.”
Mr. Brown, in response to questioning by his attorney, said:
“A. Mr. Kindel came in, he said he would like to renew some notes, or for me to renew them, and he had a new note typed out with interest and all on it, and I don’t remember whether he gave me the two notes back or not, but I signed the note and then he asked me to get my wife to sign it and she was in the rear of the bakery and I went back and talked to her and she refused to sign. I came back and told Mr. Kindel that she would not sign and we talked a minute. I went back, I talked to her again and I came back, Mr. Kin-del was gone and the note was gone and I have never seen him any more.
“Q. Did you ever hand that note to Mr. Kindel? A. No.”
From the testimony hereinabove set forth by the maker and payee, the jury had before it evidence from which it could conclude that a valid delivery was made of the note in question.
We have studied the evidence presented by the record and briefs in this case and find no error in the actions of the lower court in sustaining the jury’s verdict.
The trial judge in his order determined that the jury had allowed $67.12 more interest than was due and ordered the plaintiff to enter a remittitur of this sum. •
The court, in the above order, found that the points as to usury were not well founded, there being virtually no evidence from which the jury could find a wilful intent to exact usurious interest; and that if any excessive interest was charged, it was a mere miscalculation on the part of plaintiff Kin-del when, in 1957, he drew up the note sued on.
The trial judge, in his order entering the remittitur of $67.12, stated:
“Interest due from August 4, 1949 to April 1, 1957 (on principal sum of $2,184.00) equals the sum of $1,587.04. This is computed on the basis of 6% for the first year and 10% thereafter. The principal amount of the note, therefore, on April 1, 1957, should have been $3,771.04 instead of $3,929.74.”
What the trial judge felt to be the correct amount due was $158.70 less than the face amount ($3,929.74) of the renewal note dated April 1, 1957, the subject matter of this suit.
The trial judge then found the interest on the sum of $3,771.04 from April 1, 1957, until the date of the trial on January 25, 1960, to be in the sum of $915.36. The jury in its computation found the interest to be $823.78 or $91.58 less than it should be. Apparently the trial judge then deducted the under-assessed interest ($91.58) from the excess amount he found on the note, to-wit, $158.70, leaving the total amount due some $67.12 less than the amount of the jury verdict. This he ordered to be remitted.
In making his remittitur order, the trial judge apparently felt that the only amount due on August 4, 1949, was $2,184 and that there was no valid claim for $394.81 interest alleged to have accrued from April 1, 1948, to that date. Therefore, in computing what he found to be the agreed upon interest on $2,184 from August 4, 1949, to April 1, 1957, he arrived at the figure of $3,771.04, or $158.70 less than the face amount of the renewal note. The agreed upon interest was within legal limits.
The appellee contends in his brief that the note sued upon was in the sum of $3,929.74. The trial judge apparently concluded that the note should have been for $3,771.04 instead of $3,929.74. The appellee states in his brief:
“On or about August 4, 1949, Appellant-Defendant paid on said notes the *307 sum of $2,000.00 leaving a balance due on said two notes of the sum of $2,184.00 with interest on $4,184.00 from April 1, 1948 to April 1, 1949 at 6% in the sum of $251.04 and from April 1, 1949 to August 4, 1949 at 10% per annum, four months, four days, in the sum of $143.77 so that on August 4, 1949, there was due O. T. Kindel, the payee, from Appellant-Defendant, the sum of $4,184.00 of principal, plus $394.81 interest, in all in the sum of $4,578.81, on which was paid $2,000.00, leaving a balance due as of that date of $2,578.81 and O. T. Kindel was entitled to interest on said sum from August 4, 1949 to April 1, 1957 at 10% per annum; seven years, seven months and twenty-six days, which equalled $1,-974.33 interest, which added to balance due August 4, 1949 of $2,578.81, brought the total amount due on April 1, 1957 to $4,553.14 and O. T. Kindel only took a note for $3,929.74, positively less than the amount owing to him at that time. This note was later assigned to the Appellee-Plaintiff herein, Max K. Rodes.”
From the determination of the trial judge and from the computation of the appellee it thus appears that the trial judge figured the renewal note should have been for some $158.70 less than shown on its face. The appellee contended that the amount due was $4,553.14 and that the note for $3,929.74 was actually less than the sum due Kindel.
The evidence was conflicting and it was for the jury to determine the facts in the case. We do not express an opinion on whether or not the trial judge erred in reducing the amount of the note sued upon from $3,929.74 to $3,771.04, but only comment that if the court was in error only the appellee could complain since this would reduce the size of the jury’s verdict.
The evidence does not reflect that the face amount of the renewal note ($3,-929.74) was the result of a usurious scheme. If Kindel had compounded interest over this period of time as alleged by the appellant, the renewal note would have been in excess of the one actually made. From the evidence adduced in this case, we cannot conclude that a usurious scheme was involved.
Florida Statute, § 687.04, F.S.A., requires a wilful violation before the penalty provisions can be invoked for usury. The adjudicated cases in Florida are consistent on the proposition that there must be a corrupt intent to take more than the legal rate for the use of money loaned. Such was so held by this court in Stewart v. Nangle, Fla.App.1958, 103 So.2d 649, 653, which cited the case of Chandler v. Kendrick, 1933, 108 Fla. 450, 146 So. 551, 552, and quoted therefrom as follows:
‘“(1) The very purpose of statutes prohibiting usury is to bind the power of creditors over necessitous debtors and prevent them from extorting harsh and undue terms in the making of loans. Under the law and the decisions, usury is a matter largely of intent. It is not fully determined by the fact of whether the lender actually gets more than the law permits, but whether there was a purpose in his mind to get more than legal interest for the use of his money, and whether, by the terms of the transaction and the means employed to effect the loan, he may by its enforcement be enabled to get more than the legal rate. Benson v. First Trust & Savings Bank, 105 Fla. 135 [134 So. 493], 142 So. 887; R.C.L. pp. 223, 224.
“‘(2, 3) A thing is willfully done when it proceeds from a conscious motion of the will, intending the result which actually comes to pass. It must be designed or intentional, and may be malicious, though not necessarily so. “Willful” is sometimes used in the sense of intentional, as distinguished from “accidental,” and, when used in a statute affixing a punishment to acts *308 done willfully, it may be restricted to such acts as are done with an unlawful intent. Clark v. Grey, 101 Fla. 1058, 132 So. 832; United States v. Boyd, C.C., 45 F. 851, text 855; State v. Clark, 29 N.J.L., 96.’ ”
See also Shaffran v. Holness, Fla.App.1958, 102 So.2d 35; and Jones v. Hammock, 1937, 131 Fla. 321, 179 So. 674.
We affirm the lower court.
Affirmed.
SHANNON, C. J., and WILLSON, J. H., Associate Judge, concur.