165 So.2d 182 (1964)
The CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, a corporation, Appellant,
v.
Alice B. FISHER, otherwise known as Alice Bridgman, individually and as Executrix of the Estate of Frederick T. Fisher, deceased, Appellees.
No. 63-563.
District Court of Appeal of Florida. Third District.
June 9, 1964.
Rehearing Denied June 24, 1964.
*183 Mershon, Sawyer, Johnston, Simmons & Dunwody, W.O. Mehrtens, Ward & Ward, Miami, for appellant.
Fuller Warren, Miami, and Thomas Hart Fisher, Chicago, Ill., for appellees.
Before CARROLL, HORTON and HENDRY, JJ.
CARROLL, Judge.
This is an appeal by the defendant below from a summary judgment entered in an equity suit brought by a borrower against a lender. The challenged decree held that a promissory note which provided for payment of interest prior to maturity or default at the rate of 5 1/2% per annum, was rendered usurious under ch. 687, Fla. Stat., F.S.A., by the inclusion of a provision for payment of interest at the rate of 10% per annum on past due principal and interest.
On June 23, 1949, the appellee Alice B. Fisher and her husband Frederick T. Fisher, since deceased, borrowed $55,000 from the appellant The Connecticut Mutual Life Insurance Company (hereafter referred to as Connecticut), for which they gave their note, payable in 40 equal semi-annual installments. In 1952 an additional sum was borrowed and a second note was given for $21,375. In 1953 there was a further increase in the loan, at which time the first two notes were cancelled and a new note was given to Connecticut on December 28, 1953, in the principal amount of $83,000, payable in 30 semi-annual installments of $2,766.67, the final payment being due December 1, 1968.
In the first two notes the interest called for prior to maturity or default was 5 1/4% per annum and in the third note it was 5 1/2% per annum. Each of the notes contained also a provision for payment of interest at the rate of 10% per annum on matured principal and interest. Thus, in the third note, after the statement of the amount of principal and the manner of payment in semi-annual installments, the provisions for interest as set out in the printed form (with the matter inserted by the parties shown in italics) were as follows:
"* * * together with interest on said principal sum and on all unpaid balances thereof at the rate of 5 1/2% per annum from date, payable semi-annually on the 1st of every June and December, while no default in any payment hereunder exits, both principal and interest payable at said office in Hartford, Connecticut, in lawful money of the United States, or its equivalent in exchange on New York.
"Past due principal and interest shall bear interest from maturity at 10% per annum until paid."
Proceeding first individually, and then by amendment also as the representative of the estate of her deceased husband, Mrs. Fisher sued Connecticut charging the notes were usurious, seeking cancellation of the outstanding note for $83,000 and the recovery *184 of interest paid.[1] The defendant denied the charge of usury. The plaintiff moved for and obtained a summary final decree which held that the promissory note on its face called for payment of interest in excess of 25% per annum, and that Connecticut had willfully and knowingly charged and received such usurious interest. The decree forfeited the principal and interest, and reserved jurisdiction to determine the amount of and grant money damages against the lender. Connecticut then took this appeal.
The determinative question is whether a promissory note which calls for payment of interest to maturity at a stated lawful rate (5 1/2% per annum) is rendered usurious by a provision for payment of interest at a lawful rate (10% per annum) on matured principal and on matured interest.
The promissory note[2] made provision for payment of no more than lawful interest, and, as the appellant correctly contends, neither the note on its face nor its performance would violate the usury law. First, as to principal, the note could have provided for interest at a given rate to be paid on the principal "until paid," in which event the specified rate would have applied not only to maturity but after maturity. Instead, a medium rate of interest (5 1/2% per annum) was imposed on the principal prior to maturity and a higher though lawful rate (10% per annum) was imposed on matured principal. That higher rate would apply only from due date to time of payment on such parts of the principal as fell due and were not paid at their respective maturity dates. Clearly, as to principal, the provision for payment of interest at 10% per annum after maturity did not infect the transaction with usury, as it only designated a different rate of interest to be paid after maturity than the rate payable for the time prior to maturity.[3]
Second, as to interest, the provision for payment of interest on matured unpaid installments of interest was not usurious and did not amount to a provision for compound interest. This point was set to rest by the Florida Supreme Court in Morgan v. Mortgage Discount Co., 100 Fla. 124, 129 So. 589. There the note provided for interest on the principal at 8% per annum and provided for deferred interest payments to bear interest from maturity at 8% per annum. In holding the note was free of usury the court said:
"In this case the agreement to pay interest upon interest from the date it became due was contained in the promissory note. Such an agreement violates no statute. It does not amount in this case to the taking of more by way of interest than the laws against usury permit. The agreement was made upon the faith of a regular and punctual payment of the interest and the computation of interest upon the interest supplies the place of prompt payment and indemnifies the creditor for his forbearance. It is founded upon a moral and equitable consideration, the forbearance to enforce payment and extension of time. See Young v. Hill [6 Hun. 613], 67 N.Y. 162, 23 Am. Rep. 99; Sanford v. Lundquist, 80 Nebr. 414, 118 N.W. 129, 18 L.R.A. (N.S.) 633.

*185 "The latter case was one in which the agreement was made after interest became due. In such cases the courts are practically unanimous that such agreements are valid. In such cases the consideration is identical to support the agreement when made before the interest becomes due. See Bledsoe v. Nixon, 69 N.C. 89, 12 Am.Rep. 642."
Other jurisdictions citing Morgan v. Mortgage Discount Co., supra, have recognized that a provision in a note for interest on defaulted installments of interest is valid under Florida law. Fahs v. Martin, 5 Cir.1955, 244 F.2d 387, 399; Transbel Inv. Co., Inc. v. Scott, 344 Pa. 544, 26 A.2d 205. And see Palm v. Fancher, 93 Miss. 785, 48 So. 818, 33 L.R.A.,N.S., 295, (Anno. at pp. 301-303, and cases cited there).
In a North Carolina case (Bledsoe v. Nixon, 69 N.C. 89, 12 Am.Rep. 642) cited in the above quotation from the Morgan case, it was held that where interest is stipulated to be paid at fixed times, a default in its payment imposes an obligation to pay interest thereon from the date such interest payment was due, even without a stipulation therefor in the note; and it is so held in many jurisdictions. See Anno. 27 A.L.R. 81, 84.
Equally authoritative is the case of Graham v. Fitts, 53 Fla. 1046, 43 So. 512, decided prior to Morgan. It involved a note for $4,000 payable in six years which provided for annual payments of interest at 10% per annum. The interest obligation was also evidenced by separate coupon notes which were referred to in the body of the main note. They included a provision for payment of interest on matured interest at the said rate of 10% per annum. The court held that the provision for payment of such interest on matured interest installments did not amount to usury. The presence there of coupon notes for the interest installments made no material distinction, because the court viewed them (as would be done where there was a provision for payment of such interest in a note) as a default of an obligation which "should draw interest by way of damages for the detention of the money." The court added that "[t]he debtor can avoid such interest on interest by paying the interest when due." On the authority of the Morgan and Graham cases we hold the note or notes involved were not usurious.
It is not without reluctance that we find it necessary to conclude the chancellor was in error and to disturb his considered decree. We are, however, impressed by this record which shows a long time loan on businesslike and customary terms, and the absence of proof of the existence of a corrupt intent to take more than the legal rate of interest for the use of the money loaned. The chancellor appears to have given undeserved significance to the actuarial computation submitted by the plaintiffs in support of their motion for summary final decree, which computation projected the total of the interest that would be payable on the principal and on deferred interest if the specified installments of principal and interest were not paid as contracted for and should be allowed to become and remain in default. As the Supreme Court stated in Jones v. Hammock, 131 Fla. 321, 179 So. 674, 675, "[U]sury is largely a matter of intent and is not fully determined by the fact of whether the lender actually gets more than the law permits, but whether there was a purpose in his mind to get more than legal interest for the use of his money." Therefore, such actuarial computation was without directional force to point out usury in the transaction, in the absence of a showing that it was a scheme or device entered into with corrupt intent to charge more for the loan than the rate of interest allowed by law. Jones v. Hammock, supra; Shaffran v. Holness, Fla.App. 1958, 102 So.2d 35, 39. To reach a conclusion that there was such a scheme or device here, it would be necessary to assume that the provisions of the note for payment of the principal in semi-annual installments and for payment of interest semi-annually were not intended to be used, and that defaults *186 in such installments were planned in order to create and exact the greater amount of interest which would result. Such a corrupt intent should not be assumed. This is so because, as stated in the first opinion in Benson v. First Trust & Savings Bank, 105 Fla. 135, 134 So. 493, 496, 142 So. 887, 145 So. 182, if a loan when complied with as agreed upon will not involve an unlawful rate of interest "the legal consequences of such an arrangement must be tested by the results contemplated by the parties on the assumption that both lender and borrower will fully carry out their agreement rather than the special results which may follow, but are not necessarily certain to ensue, when the borrower breaches a covenant."
Plaintiffs also submitted computations showing principal and interest paid at certain times between 1954 and 1960 which were set out in paragraph seven of the decree and there indicated as amounting to payments of interest at rates ranging from 10.10% to 18.22%. The appellant contends, and we agree, that with two exceptions the items of interest listed in paragraph seven of the decree as being more than 10% per annum were incorrectly so designated. Without undertaking a detailed discussion thereof, it can be said that the higher percentages listed appear from the record to have resulted from improper allocation of interest payments, such, for example as taking the interest paid on a defaulted installment of interest for a period of time and adding it to the interest paid concurrently on an installment of principal, thus attributing to a portion of principal more interest than was due or paid on that item. There were, however, overpayments of interest made in two instances, as conceded by Connecticut. These were involved in the fifth and sixth items listed in paragraph seven of the decree, and came about when interest was charged at the end of a period during which a payment had been made for a partial release. The error occurred through collecting the interest on the amount paid for a partial release and erroneously collecting that interest again on the same sum by not excluding it from the principal in computing interest at the next interest payment date. The overpayment of interest in those two instances appears to have been due to inadvertence rather than the result of corrupt intent. See Jones v. Hammock, supra. Plaintiff will be entitled to credit accordingly.
For the reasons stated the decree appealed from should be and hereby is reversed and the cause is remanded to the circuit court with direction to dismiss the complaint.
Reversed.
NOTES
[1] Chapter 687, Fla. Stat., F.S.A., relating to Interest and Usury, makes it unlawful to exact interest at more than 10% per annum from individuals or 15% per annum from corporations (§ 678.03); and for willful violation thereof provides for forfeiture of the usurious interest reserved and for recovery of double such interest paid (§ 687.04); and forfeiture of principal and interest for willfully and knowingly charging or accepting such interest in excess of 25% per annum. (§ 687.07)
[2] In the three notes the pertinent provisions relating to interest were the same, and our discussion will be directed to the third note, which served to replace the two earlier ones.
[3] See Morton v. Ansin, Fla.App. 1961, 129 So.2d 177, 181.