SCHWARTZ, ALAN R., Associate Judge.
The central issue on the main appeal in this case — which is determinative also of the satellite cross-appeal and interlocutory appeals — concerns the question of whether the multi-million dollar mortgage loan given by American Savings & Loan upon a Broward County apartment complex called the Essex House was usurious. We agree with the trial court’s determination that it was not.
When the loan, which had an interest rate of 10%, was initially negotiated in August, 1972,[1] American, a domestic savings and loan institution, exacted various discount, commitment and modification “fees”, at least some of which would surely be considered interest and subject to being “spread over the stated term of the loan for the purpose of determining the rate of interest”, under F.S. § 687.03(2); Financial Federal Savings and Loan Assn. v. Burleigh House, Inc., 305 So.2d 59 (Fla.3rd DCA 1974), cert. discharged, 336 So.2d 1145 (Fla.1976). Since even with all the fees added to the 10% rate, the effective rate did not exceed 15%, no question of usury arose in the first instance.
By the middle of 1973, however, the loan went into default and the following provision of the mortgage and note became effective:
“While in default, this obligation shall bear interest at the highest lawful rate for corporations in the State of Florida.”
In September, 1973, American filed a foreclosure action in the Broward County Circuit Court; a few days later, the owner filed a Chapter X reorganization proceeding in the United States District Court and obtained a stay of the state foreclosure action. In the Chapter X proceeding in the Federal Court, American filed two separate *255 statements as to the amount of its claim against the debtor. Both stated the amount of claimed interest at $1,572.46 per day. It is undisputed both that this sum amounts to a rate of 15% actual interest on the unpaid balance due, without any point spreading whatsoever, and that the effective rate of interest represented by this claim was thus in excess of the 15% statutory corporate maximum. The issue before us is whether the mere fact that usurious interest was at one time claimed, though not paid, received, or awarded is sufficient to render the transaction itself usurious in law and effect.
The reasons that the issue may be accurately posed in this manner arise from the fact that after American had secured permission from the federal court to pursue the Circuit .Court foreclosure action — and was met with a usury defense by the bankruptcy trustee — it no longer claimed a usurious interest rate. It contended, instead, that a proper view of the default interest clause we have quoted was that it was entitled to 15% including the amounts of any fees required to be spread as interest over the life of the loan. In accordance with this interpretation, the final foreclosure judgment which it secured, and which is now here on appeal, does not, in fact and without dispute, involve an interest allowance of more than 15%.
Upon close questioning from the bench at the oral argument of this appeal, counsel for the appellant-trustee stated clearly that his client’s position here does not involve a claim that, on its face, or even upon its proper interpretation, the interest upon default clause requires or permits the payment of 15% interest without spreading;[2] that, standing alone, the clause does not render the transaction usurious, even though a default has in fact occurred; and that American’s second, and the trial court’s initial interpretation of the clause to involve 15% with spreading, is correct. Counsel stated unequivocally that the sole basis of his contention that usury was involved lies in American’s fruitless and bare claims to usurious interest in the Chapter X proceeding. We cannot agree with this position, which, we think, is in conflict both with the decided cases and with common sense.
A holding that a mere demand for usurious interest unjustified by any contractual requirement to pay it, renders the loan usurious, would mean, for example, that an utterly baseless claim for 17% interest upon a simple note which plainly provides for only 9% would invalidate the transaction itself. This cannot be and is not the law. In Connecticut Mut. Life Ins. Co. v. Fisher, 165 So.2d 182 (Fla.3rd DCA 1964), for example, the court overturned a finding that usury was involved even though the lender had actually charged and accepted excessive interest, when the overpayments were caused only by a mistaken computation as to the interest required by the agreement. The court said at 165 So.2d 184, 186:
“The promissory note made provision for payment of no more than lawful interest, and, as the appellant correctly contends, neither the note on its face nor its performance would violate the usury law . . .”
* * * * * *
“. . . There were, however, overpay-ments of interest made in two instances, as conceded by Connecticut. These were involved in the fifth and sixth items listed in paragraph seven of the decree, and came about when interest was charged at the end of a period during which a payment had been made for a partial release. The error occurred through collecting the interest on the amount paid for a partial release and erroneously collecting that interest again on the same sum by not excluding it from the principal in computing interest at the next interest payment date. The overpayment of interest in those two instances appears to have been due to inadvertence rather than the result of corrupt intent.”
See cases collected at Annot., Usury—Mistake, 11 A.L.R.3d 1498. As the Second Dis *256 trict held, in dealing with a converse situation in which the contract was usurious upon its face, in First Mortgage Corp. of Vero Beach v. Stellmon, 170 So.2d 302, 305 (Fla.2d DCA 1965), cert. den., 174 So.2d 32 (Fla.1965):
“. . . the usurious nature of the contract depends upon the liability of the borrower under its terms, or, to put it another way, upon what may be demanded of the borrower, under the terms of the contract, rather than what is demanded from him. This is, of course, consonant with the well-settled principle that the usurious nature of a contract is to be determined as of the date of its inception. Carter v. Leon Loan and Finance Company, 108 Fla. 567, 146 So. 664; Shorr v. Skafte, Fla., 90 So.2d 604; Kay v. Amendola, Fla.App., 129 So.2d 170; Home Credit Company v. Brown, Fla., 148 So.2d 257, 55 Am.Jur. 387.”
The Supreme Court held to like effect in Home Credit Corp. v. Brown, 148 So.2d 257, 260 (Fla.1962):
“In any event, we think computations under the usury law must be based on a determination of the scope of acceleration rights which a note or contract purports to give a lender or holder and not upon the sums actually claimed by him. This follows necessarily from the principle that the vice of usury is one which inheres in the parties’ agreement itself.”
In accordance with these authorities, we hold that an otherwise non-usurious loan does not become usurious merely because usurious interest is claimed or demanded under it.[3] The judgment[4] and orders [5] below are therefore
Affirmed.
ALDERMAN, J., and BERANEK, JOHN R., Associate Judge, concur.

. American purchased and modified an existing mortgage loan between the owner and Atlantic Federal Savings and Loan of Fort Lauderdale, which had been taken in 1969, and which bore an interest rate of 8.75%.

. Therefore, we express no opinion on this issue.

.Our conclusion that the transaction was not usurious pretermits consideration of the difficult questions of whether American, which operated as an “ordinary” domestic savings and loan association, qualifies for the exemption from the usury statutes provided by Fla.Stat. § 665.395 for “building and loan association[s]”, see Skinner v. Southern Home Building and Loan Assn., 46 Fla. 547, 35 So. 67 (1903), Spinney v. Winter Park Building & Loan Assn., 120 Fla. 453, 162 So. 899 (1935); and whether, if it does, such a blanket exclusion of a class of lenders which seems not to differ, as to the subject regulated (that is, lending money), from other non-exempt institutions, can be constitutionally justified.
Moreover, since the price realized when American bid in at the foreclosure sale which followed the final judgment below, did not even satisfy its first mortgage lien, much less a large and outstanding second mortgage, we find it unnecessary also to reach the equally difficult question as to whether the cross-appealing “Bond Indenture Trustee” was entitled to an equitable third lien on the property despite Sec. 70(c) of the Bankruptcy Act.

. We find no error as to the fees awarded to American’s counsel below.

. As the appellant-trustee concedes, our affirmance of the final judgment renders moot the interlocutory appeals, Case Nos. 76-564, 76-843, and 76-844, he has taken from several post-final judgment orders.