137 So.2d 887 (1962)
E.B. BROWN, As Administrator of the Estate of Raymond Green, Deceased, Appellant,
v.
HOME CREDIT CO., Inc., et al., Appellees.
No. 2555.
District Court of Appeal of Florida. Second District.
February 9, 1962.
Rehearing Denied February 28, 1962.
L.D. Martin, St. Petersburg, for appellant.
*888 Harold C. Farnsworth, Hall, Farnsworth & Rousseau, Tampa, Theodore Calvin Taub, Rood, Dixon & McEwen, Tampa, and Minnis & Williams, St. Petersburg, for appellees.
ALLEN, Judge.
The appellant is the administrator of the estate of Raymond Green, deceased. He has appealed from a final decree of foreclosure on certain real property owned by his decedent, Green. Appellant asserts that no money was due on the mortgage foreclosed in that the two negotiable notes for which said mortgage was given as security were infected with usury. The mortgagee, Home Credit Co., one of the appellees here, is the holder of the notes and mortgage by virtue of an assignment from Alderman Building Materials, Inc., another appellee. Home Credit has cross-appealed from that part of the lower court's decree which resulted in a substantial reduction of the face amount of the indebtedness sought to be recovered by the foreclosure. Appellee Alderman is here merely to defend the lower court's finding that defendant-appellant had failed to meet the burden of proving fraud alleged in his cross-claim against Alderman.
The notes and the mortgage given to secure them resulted from some home improvement construction that was performed by Alderman for appellant's decedent, Raymond Green. In the summer of 1959, in response to Alderman's radio advertising, Green contacted Alderman by phone for the purpose of having an additional room built on to his house. Preliminary negotiations for the addition were carried out by Alderman's salesman who dealt with Raymond Green and a woman purporting to be his wife, Kathleen Green. On August 21, 1959, the Greens signed a "contract" with Alderman for the construction of a room. Said contract is actually a form entitled "property improvement purchaser statement." It reflects that a ten by twelve concrete block addition was to be built on to Raymond Green's house. Estimated cost was $2,500 with "total cost or price" to be $5,000 if programed over a period of 120 months. Said purchaser statement also lists encumbrances on the property where the addition was to be built and the sources and total of Green's income. At the bottom of the form is a printed statement that the information contained therein is furnished for the purpose of securing credit. The execution of the form shows the signature of Kathleen Green and the mark of Raymond Green.
Before Alderman started any work on the improvement it transmitted the above information to Home Credit as an application for credit in behalf of the Greens. Home Credit "approved a loan" to the Greens subject to encumbrances being removed. What this means is that, in accordance with the pattern of prior dealings between Alderman and Home Credit, Alderman would construct the improvement and receive therefor from the Greens a completion certificate and a note in the face amount of $4,999.20. Alderman would also pay off and receive satisfactions for prior encumbrances on the property being improved. In this case, for removing the encumbrances Alderman was to receive another note from the Greens in the face amount of $3,750. The Greens were to then give a mortgage to Alderman to secure the two notes. All of this being done, Home Credit agreed to take an assignment of the notes and mortgage from Alderman without recourse, giving in exchange the sum of $5,000. Alderman would receive $4,750 cash from Home Credit and the latter would hold $250 in a reserve account in Alderman's name. This reserve account is apparently a reserve for bad debt fund which has application to all financing transactions between Alderman and Home Credit. In reference to the instant transaction, Home Credit, in the event of default, would be entitled to a percentage of the $250 equal to whatever percentage of the total assigned indebtedness turned out to be uncollectable.
*889 Home Credit having approved the "loan," Alderman proceeded with the construction of the room, completing same in September, 1959. The "closing" took place on September 22, 1959. On that date the Greens came to Alderman's office and signed a completion certificate and a contract reflecting the entire transaction. This contract in relation to other portions of the record-on-appeal is a model of inconsistency which we will attempt to unravel. The contract first describes the work that was done and shows the price thereof to be $2,500. It also shows that Alderman was to "pay off" $2,500 worth of encumbrances. The contract then reads:
"The undersigned Owner(s) agree (s) to pay therefor the cash price of $5,488.00 with down payment thereon of $488.00 paid at the execution of this contract, and the balance of the cash price of $5,000.00 to be paid at the completion of the work or in lieu thereof, the undersigned Owner(s) agree(s) to pay the time payment price of $3,750.00 [and] $4,999.20 [both] payable in 120 monthly payments of $31.25 [and] $41.66 each, after having made a down payment with the execution of this contract of $ ____. The first of said monthly payments shall be due ... November 3, 1959." (Emphasis supplied.)
Also typed into the contract were "$8,749.20 total time payment" and "$72.91 total monthly payment." It is apparent that the Greens elected the time payment method provided for in the last half of the quoted clause in that nowhere does the record satisfactorily disclose that a down payment of $488.00 was made although it was alluded to in the testimony. Furthermore the contract was not executed until the work was ostensibly completed and no tender of the balance was made at that time.
The time payment method elected by the Greens requires some explanation. The $4,999.20 figure breaks down as follows: $2,500 of it is the actual cost of the addition or what the Greens would have had to pay in cash. The remaining $2,499.20 is represented to be a slightly less than ten per cent per annum "add on" price for permitting payment to be made over a ten year period in 120 monthly installments. The $3,750 figure represents $2,500 in encumbrances to be removed by Alderman plus $1,250 as a five per cent per annum "discount" for permitting payment over the ten year period.
Simultaneous with the execution of the certificate of completion and the above described contract, the Greens executed two negotiable notes and a mortgage to secure them in favor of Alderman. Both notes are identical in every respect except that one reflects a face amount of $4,999.20 to be paid over a ten year period at $41.66 per month and the other reflects a face amount of $3,750 to be paid over a ten year period at $31.25 per month. Both notes on their face are non-interest bearing and both provide for acceleration to maturity of the entire unpaid amount in the event that any installment is not made when due. Neither acceleration clause provided for the elimination of any unearned "interest" contained in the installments should the notes be precipitated to maturity by operation of said clauses.
These notes and the mortgage were assigned without recourse by Alderman to Home Credit on October 2, 1959, as aforedescribed. The record shows fairly conclusively that on the date of the closing, September 22, 1959, the Greens knew that the "paper" would be assigned to Home Credit and that all payments were to be made to Home Credit. The record also shows that Alderman and Home Credit had been involved in fifty or sixty similar transactions in the past. There is no interlocking ownership or control between the two concerns but the record establishes that Alderman never starts an improvement for a prospect until the prospect's credit has been investigated by Home Credit and the "loan" approved. Loans *890 have from time to time been disapproved by Home Credit, but none have ever been disapproved at or after the "closing" of a transaction such as took place between the Greens and Alderman. It is also typical of all similar financing transactions between Alderman and Home Credit that the latter, as a condition precedent to taking an assignment of the paper, requires the former to satisfactorily remove encumbrances so that the mortgage, when assigned to Home Credit, will be a first mortgage.
As has been stated, the contract which preceded the assignment of the notes and mortgage to Home Credit showed that Alderman had advanced $2,500 to remove encumbrances. The record shows, however, that Alderman actually advanced $2,850.70 in removing encumbrances. This additional $350.70 obligation was not assigned to Home Credit and the Greens orally agreed to repay it to Alderman. The record does not show whether or not the Greens ever paid it. If not, it may be assumed that Raymond Green's estate is still liable to Alderman for the $350.70. This discrepancy is mentioned simply to dispose of it in that it is not relevant to the notes and security given therefor at issue in this case. As between the Greens and Home Credit, the principal sum of the $3,750 indebtedness was $2,500.
Raymond Green made one payment to Home Credit in December, 1959, but died before any further payments were made. None have been made since. Home Credit, by operation of the acceleration clauses in the two notes, brought suit in June, 1960, to foreclose the mortgage. Its complaint alleged that one installment had been paid and that "$8,676.29 together with interest from December 1, 1959" was "due, owing and unpaid." The defendant administrator answered and counterclaimed and cross-claimed against Home Credit and Alderman respectively for cancellation of the indebtedness on the grounds of usury. After the trial was commenced, the defendant was permitted to amend his counterclaim and cross-claim so as to also allege fraud and failure of consideration to justify cancellation of the indebtedness under the clean hands doctrine.
The testimony taken was quite extensive and in many particulars was far from enlightening. The foregoing facts have been gathered from both the transcript of proceedings and the documents, pleadings, exhibits, etc., that make up the record-on-appeal. Though admittedly no model for brevity, the facts set out heretofore in this opinion are the facts of this case distilled to their significant essence on which the lower court's decree was based.
The lower court in its decree ruled that the burden of proving fraud had not been met by the defendant, but that the notes and mortgage held by Home Credit were drawn in an attempt to circumvent the usury statutes for the reason that Home Credit in effect dictated and created the terms of the loan obligation to the original parties in privity with full knowledge that, if the loan had been handled as a normal loan, the amount of interest derived would in fact have been usurious; and that the mortgage could be foreclosed in the amount of $5,000 which the court called "principal" with the remaining indebtedness treated as forfeited interest. The decree also awarded costs and attorneys' fees to Home Credit.
In its decree the lower court denied holder-in-due-course status to Home Credit apparently because of its close involvement with Alderman throughout the transaction between Alderman and the Greens. As was noted heretofore, the loan application was made to Home Credit in behalf of the Greens before improvement construction was ever begun.
The lower court further found that what Alderman and Home Credit insisted to be a "time price differential" on the $4,999.20 note and "five per cent per annum discount" on the $3,750 note were in fact interest in excess of that permitted to be charged under § 687.03, F.S.A. The extent of usury, however, was found to be *891 more than ten per cent but less than twenty-five per cent over a 120 month period. The court, therefore, decreed that only the interest itself should be forfeited and thereby denied the counterclaim for forfeiture of the whole indebtedness.
We feel that the lower court had sufficient competent evidence before it to justify its finding that the notes at issue in this case were permeated with usury; that the alleged time price differential and discount were merely a disguise for usurious interest in the two non-interest bearing notes; and that Home Credit participated in the scheme to an extent sufficient to remove it from under the holder-in-due-course shield. The facts on these issues were in considerable conflict. Our enunciation in a usury case previously before this court, Cutri Enterprises, Inc. v. Pan American Bank of Miami, Fla.App. 1959, 115 So.2d 592, is especially applicable to these findings by the lower court in the instant case. In that case a difficult fact determination had been made from voluminous conflicting testimony on the question of usury. We held that such a determination was the function of the trial court and that an appellate court should not seek to re-evaluate the facts in opposition to determinations of the lower court. So do we hold in this case insofar as the question of intent to commit usury is concerned.
Appellees urge that no usury has been committed in connection with the $3,750 note since recovery is sought only of $2,500 "principal" plus interest to date. The record shows, however, that Home Credit did not exhibit such willingness to take less until after the trial was under way. In its complaint, Home Credit sought recovery of the full amount less one installment of the $3,750 note precipitated to maturity by the acceleration clause. Appellees also contend that the $4,999.20 "time price" note comes under the decision in Perry v. Beckerman, Fla. 1957, 97 So.2d 860. In that case the Court held that the usury statutes condemn usury charges made as an incident to a loan of money but not transactions representing the purchase price of property. The Court further held that the transaction at issue in that case was not a loan but a speculative venture participated in by both a property owner and builder whereby the latter agreed to construct a motel for the former in return for which he would receive in lieu of cash a stipulated sum to be repaid in installments over a period of time. The stipulated sum was greatly in excess of what the cash price would have been. The Perry opinion does not, however, state that if in fact there has been a loan, a scheme to disguise it as a sale in an attempt to circumvent the usury statutes will prevent those statutes from operating. Cases are legion in this state holding that usury on the part of a lender is largely a matter of intent. In the instant case the lower court in effect found that Alderman and Home Credit, acting in concert, intended to disguise a usurious loan as a sale of a home improvement. We are not persuaded to disturb that finding.
In Kay v. Amendola, Fla.App. 1961, 129 So.2d 170, a case decided by this court, we upheld a finding that a usurious loan had been disguised as an option. The opinion states at 172:
"The second point raised was that the transaction involved here was not a loan and repayment but was simply a sale and purchase transaction. We do not agree. It is well settled in Florida that the law will look to the substance of the transaction rather than to the form to determine usury.
"Our usury statutes show a clear legislative intent to prevent accomplishment of a usurious scheme by indirection, and the concealment of the needle of usury in a haystack of subterfuge will not avail to prevent its pricking the body of the law into action."
The principle announced in the above quotation applies with equal force to the instant case.
*892 Having upheld the lower court's finding that Home Credit in effect made a loan to the Greens for which a usurious rate of interest was intended to be exacted, we must now determine the correctness of its finding as to the rate category of usurious interest charged and the penalty that it imposed.
Section 687.03, F.S.A., provides that it shall be usury to charge interest on a loan in excess of ten per cent per annum. Section 687.04, F.S.A., imposes penalties for violation of § 687.03. It provides that if the interest is charged but not paid or reserved in advance the lender will forfeit all interest as was decreed by the lower court in this case. If, however, the usurious interest has been exacted in advance  either paid or reserved  then the lender must forfeit double the amount of the interest so paid or reserved. Section 687.07, F.S.A. provides that if the interest charged exceeds twenty-five per cent per annum the lender shall forfeit the entire indebtedness, both principal and interest. The latter part of § 687.07 also makes the exaction of such interest a misdemeanor. Thus has the abbreviated description "criminal usury" come to be applied to interest charged in violation of § 687.07 as has the term "civil usury" been likewise applied to interest charged in violation of § 687.03 in conjunction with § 687.04. See Ayvas v. Green, Fla. 1952, 57 So.2d 30.
The lower court in the instant case found that Home Credit had charged interest in excess of ten per cent but less than twenty-five per cent. Such a result has to have been based on the lower court's looking only to the payments made over a 120 month period. It found that $2,500 was the principal amount on the $4,999.20 note as well as on the $3,750 note. The lower court must then have reasoned that charging interest of ten per cent and five per cent per annum respectively on said principal amounts over the entire ten year period without making any allowance for declining principal amounted to the usurious interest rate falling between ten and twenty-five per cent.
In respect to the penalty imposed we must reverse the lower court. The amount advanced by Home Credit was $5,000. The face amount of the two notes taken by Home Credit, however, was for $8,749.20. Under prior decisions in this state, this amounted to a taking or reserving of $3,749.20 in interest for which, since usurious, the lender must forfeit double the amount of the interest reserved under § 687.04. Maxwell v. Smith, 1935, 119 Fla. 389, 161 So. 566; Ayvas v. Green, Fla. 1952, 57 So.2d 30. In the instant case, the double interest forfeiture must be deducted from the amount ($5,000) actually received by the mortgagor Green and not from the greater amount recited on the face of the notes and mortgage. Ross v. Atlas Finance Corp., 1934, 113 Fla. 793, 152 So. 410. In the instant case, double the interest reserved ($3,749.20) would exceed the amount actually advanced ($5,000) by Home Credit and if deducted in full therefrom would result in Home Credit owing Raymond Green's estate $2,498.40. Therefore, for reasons which will appear infra, we hold that the forfeiture by Home Credit should not exceed an amount necessary to effect a cancellation of the indebtedness and the mortgage.
The mitigation of forfeiture just referred to results from an anomalous situation in this case which will later be brought out. The reservation of the interest in this case in addition to "civil usury" under §§ 687.03 and 687.04, F.S.A., also constituted "criminal usury" under § 687.07, F.S.A., in that in excess of twenty-five per cent per annum interest was reserved by operation of the two acceleration clauses which made no provision for the elimination of unearned interest in the installments precipitated to maturity in the event of default. Smith v. Midcoast Investment Co., 1937, 127 Fla. 455, 173 So. 348. Said clauses rendered the transaction usurious at its inception and Home Credit, being practiced in the lending profession, can be held to have known and intended the usurious consequences resulting from early default. See Shorr v. *893 Shafte, Fla. 1956, 90 So.2d 604. The Florida Supreme Court in Ayvas v. Green, Fla. 1952, 57 So.2d 30, made reference to Smith v. Midcoast Investment Co., supra, as follows:
"* * * We are mindful of the previous decision of this court in Smith v. Midcoast Inv. Co., 127 Fla. 455, 173 So. 348, 350, in which it was stated that `* * * if the note and mortgage contained an acceleration clause of which the lender takes advantage, then the bonus or excess will be prorated only over the period of time for which the lender has elected to allow the obligation to run'; but we are not persuaded that this rule should be applied to make criminally usurious that which was only civilly usurious in its inception and where the lender is not seeking to recover the full face value of the note, but only the amount actually loaned."
We feel that under Shorr v. Shafte, supra, the acceleration clauses rendered the instant transaction criminally usurious at its inception. Even if not, however, it became so under the proscription set out in the quoted portion of Ayvas v. Green, supra, when Home Credit sought to recover the full face value of the two notes as exhibited by the face of its complaint.
The penalty for "criminal usury" is forfeiture of the entire sum, both principal and interest under § 687.07, F.S.A. The anomaly previously mentioned results from a literal comparison of the double interest forfeiture for "civil usury" under § 687.04, F.S.A., with the forfeiture of both principal and interest for "criminal usury" under § 687.07. Applied to the facts of this case, the penalty for "civil usury" if literally construed exceeds the penalty for "criminal usury." Since § 687.07 appears to comprehend a greater penalty than § 687.04, the amount of forfeiture in this case should not exceed an amount necessary to effect a cancellation of the indebtedness and mortgage as stated supra. In the case of Rosenblum v. Hart, Fla. 1957, 95 So.2d 18, it was held that principal and interest were properly forfeited for wilfully exacting interest in excess of twenty-five per cent per annum, but the lender was held not to be subject to the additional penalty of forfeiture of twice the amount of interest paid or reserved under § 687.04. The Court stated that §§ 687.04 and 687.07 recognize and define degrees of usury and provide distinct and separate penalties which are not cumulative.
Since our holding in this case operates to cancel the notes and mortgage involved, that part of the lower court's decree awarding attorneys' fees and costs incident to foreclosure to Home Credit is also reversed. The part of the decree which held that the burden of proving fraud had not been met is affirmed.
The decree appealed from is affirmed in part and reversed in part and remanded for further proceedings not inconsistent with this opinion.
SHANNON, C.J., and SMITH, J., concur.