143 So.2d 222 (1962)
LEE CONSTRUCTION CORP., a Florida Corporation, Appellant,
v.
Benjamin NEWMAN and Anna Newman, Individually, and As Co-Partners, D/B/a Benann Mortgage Co., Appellees.
No. 61-759.
District Court of Appeal of Florida. Third District.
July 3, 1962.
Rehearing Denied August 13, 1962.
*223 Milton Wallace, Miami, and Battisti & Persandi, Coral Gables, for appellant.
Orr & Lazar and Richard Y. Feder, Miami Beach, for appellees.
Before PEARSON, TILLMAN, C.J., and HORTON and CARROLL, JJ.
CARROLL, Judge.
This is an appeal from a final decree dismissing a suit by a borrower to cancel a note and mortgage for usury, and granting the lenders' counterclaim for foreclosure.
The appellant corporation borrowed $44,000 from appellees Benjamin and Anna Newman, hereinafter called the lenders, who were doing business under the firm name and style of Benann Mortgage Company. In return the lenders received a note and mortgage for $52,000 payable in eight months, with interest thereon at the rate of 12.69% per annum.[1] When the note matured there remained unpaid thereon $36,400 and certain interest. The lenders then accepted $2,800 for four months' forbearance. By the time suit was filed the borrower had repaid in principal and interest the sum of $29,439.04 and there remained unpaid a principal balance of $29,900 plus certain interest.
In addition to the above facts the borrower's complaint alleged that in order to circumvent the usury laws the parties used a scheme to make the loan appear as a sale and profit. It was alleged that the borrower held a contract to buy certain lands for $52,500, which it had made in September of 1958, and was in need of $44,000 to complete the purchase. The loan amount of $44,000 was advanced by defendants on July 22, 1959. On that date the borrower assigned its land purchase contract to the lender Anna Newman. The $44,000 advanced by the defendants went to the seller of the property, which then was deeded to Anna Newman the same day. Anna and her husband immediately reconveyed the property to the borrower-purchaser. Thereupon, on said date of July 22, 1959, the borrower gave the lenders Anna and Benjamin Newman the note and mortgage involved here for $52,000.
The defendant lenders answered the complaint. They averred the $8,000 excess of the note over the amount loaned was taken because they understood they were to receive from the borrower a profit of $200 on each of forty parcels of land. The defendant lenders admitted they participated in the scheme or "contrivance" by executing the documents involved, but averred the scheme was the borrower's idea, and denied an intent to charge usurious interest. They counterclaimed for foreclosure for the admittedly unpaid principal balance of $29,900 plus certain interest. Their position on the appeal is disclosed by the following quotation from the argument section in appellees' brief:
"Appellees do not now, nor did they ever in the Court below, contend that there was no loan, that there was no understanding that the money loaned should have been returned; nor that as a result of the scheme precipitated by the Appellant, more money was to have been repaid than that which would have been paid had the statutory maximum interest been applied to the loaned principal. Appellees-Defendants' principal defense in the Court below has been and continues to be that the Plaintiff *224 was the precipitating and moving party in the scheme and that there could be no showing of a corrupt or evil intent on the part of the Defendants, because no such intent ever existed."
Appellant presented five points on appeal, which may be compressed into two: first, a contention that the transaction, despite the device used to make it appear otherwise, was a loan at a usurious rate of interest, in violation of §§ 687.03, 687.04 and 687.07, Fla. Stat., F.S.A.; second, that the statements of the lenders that they did not intend usury were not acceptable to establish their innocence, in view of the evidence to the contrary. The appellant is entitled to prevail on both points.
Section 687.03, Fla. Stat., F.S.A., provides it shall be usury and unlawful to charge for any loan or for forbearance a rate of interest greater than a stated percentage, which, in the case of corporations is 15% per annum. Section 687.04 provides that for wilful violation of the provisions of § 687.03 there is a forfeiture of the interest contracted for and of double the amount of interest which has been taken, reserved or paid, with certain exceptions not important here. Section 687.07, Fla. Stat., F.S.A., deals with forfeiture and penalties in case of excessive interest or charges, above 25% per annum. It provides as follows:
"Any person, or the agent, officer or other representative of any person, lending money in this state who shall willfully and knowingly charge or accept any sum of money greater than the sum of money loaned, and an additional sum of money equal to twenty-five per cent per annum upon the principal sum loaned, by any contract, contrivance or device whatever, directly or indirectly, by way of commissions, discount, exchange, interest, pretended sale of any article, assignment of salary or wages, inspection fees or other fees or otherwise, or for forbearing to enforce the collection of such moneys or otherwise, shall forfeit the entire sum, both the principal and interest, to the party charged such usurious interest, and shall be deemed guilty of a misdemeanor, and on conviction, be fined not more than one hundred dollars, or be imprisoned in the county jail not more than ninety days." [Italics supplied]
The chancellor denied relief to the borrower on the main suit on the basis of two findings. The first was that the scheme utilized to circumvent usury was suggested by the borrower. That fact could not excuse the lenders from the effect of the usury which resulted when they embraced and participated in the scheme. The statute condemns the charging of usurious interest directly or indirectly by any scheme or device, and is operative regardless of whether the scheme in which the parties engage is proposed by the one or the other of them. See Beach v. Kirk, 138 Fla. 80, 189 So. 263, 269; Hormuth v. Dickson, 115 Fla. 790, 156 So. 127.
The second finding of the chancellor was that the defendants "never intended to receive or charge usurious interest." That finding is against the manifest weight of the evidence. The device employed was wholly ineffective to evade the statute. Mears v. Mayblum, Fla. 1957, 96 So.2d 223; Griffin v. Kelly, Fla. 1957, 92 So.2d 515, 518-519; Beach v. Kirk, supra, opinion on rehearing, 189 So. 265, 268-269; 55 Am.Jur., Usury § 19. The lenders knew the prescribed rate of interest and were aware that the amount they were charging on the loan was more than was allowed under the usury statutes. They were not like the "unsophisticated woodsman" who was found to be without corrupt intent in an earlier case.[2] These were informed and experienced lenders. They were in the business of making loans, and admitted having engaged in from one hundred and fifty to two *225 hundred mortgage loan transactions.[3] The mortgage broker who acted as their agent in this instance had so represented them for years.
Wilful violation as referred to in § 687.04, and "wilfully and knowingly" charging or accepting interest in excess of 25% per annum as referred to in § 687.07, mean wilfully and knowingly charging and accepting for the loan an amount in excess of the maximum interest allowed. If the lender intentionally does that, then regardless of what device is used to make it appear other than a loan and interest thereon, he is guilty of usury. See Maule v. Eckis, 156 Fla. 790, 24 So.2d 576; Jones v. Hammock, 131 Fla. 321, 179 So. 674; Chandler v. Kendrick, 108 Fla. 450, 146 So. 551. The above three Florida cases together with numerous decisions from other jurisdictions were cited in Corpus Juris Secundum in support of the statement that: "The intent which enters into, and is essential to, constitute usury is simply the intent to take and reserve more than permitted by law for the loan." 91 C.J.S. Usury § 14c, p. 585. In the Maule case (24 So.2d at 577) the Supreme Court said: "* * * This Court is committed to the rule that usury is a matter largely of intent. It is not fully determined by the fact of whether the lender actually gets more than the law permits, but whether there was a purpose in his mind to get more than legal interest for the use of his money." (citing the Chandler and Jones cases.) In Jones (179 So. at 675), the Supreme Court had said:
"This court has held that one of the requisites of a usurious transaction is that there must exist a corrupt intent to take more than the legal rate for the use of money loaned (Clark v. Grey et al., 101 Fla. 1058, 132 So. 832), and that usury is largely a matter of intent and is not fully determined by the fact of whether the lender actually gets more than the law permits, but whether there was a purpose in his mind to get more than legal interest for the use of his money (Benson v. First Trust & Savings Bank, 105 Fla. 135, 134 So. 493, 142 So. 887, 145 So. 182). * * *"
In the Chandler case (146 So. at 552), the Supreme Court said: "To work a forfeiture under the statute, the principal must knowingly and willfully charge or accept more than the amount of interest prohibited by it. The evidence shows that Kendrick was an unsophisticated woodsman, and had no purpose whatever of charging more than the amount actually loaned, with 8 per cent. interest, * * *."
Here it is established by the manifest weight of the evidence, as well as through the lenders' admissions, that they knowingly and intentionally charged and reserved a sum which amounted to over 40% per annum on the sum loaned, and which was more than 30% per annum for the subsequent period of forbearance. The fact that they did so in reliance on a scheme they felt would prevent those exactions from constituting a violation of the law, does not make their intentional action which resulted in the usurious contract any less wilfully and knowingly done and undertaken. Beach v. Kirk, supra.
Where the circumstances point unerringly to an intentional taking of an amount above the sum loaned which is more than the rate of interest allowed by law, and particularly where the intent to exact such an excessive amount is further indicated by the fact that an illogical or spurious transaction is entered into for the purpose of making that which is usurious appear otherwise, the lenders will not be excused from the penalties of the usury statute by pleading ignorance of the law or that they did not intend usury. Shorr v. Skafte, Fla. 1956, 90 So.2d 604.
*226 It is with reluctance that we reverse the decree which has been rendered by the chancellor. We bear in mind that his findings, after having heard the evidence, should not be set aside lightly by an appellate court. On the other hand, when a decree is manifestly against the weight of the evidence or contrary to and not supported by the legal effect of the evidence, then it is the duty of the appellate court to reverse. Brumick v. Morris, 131 Fla. 46, 178 So. 564, 569-570; Shaffran v. Holness, Fla.App. 1958, 102 So.2d 35, 40.
Accordingly, the decree is reversed and the cause is remanded for entry of a decree in favor of the plaintiffs and against the defendants as authorized under §§ 687.04 and 687.07, Fla. Stat., F.S.A.
Reversed and remanded.
NOTES
[1] That rate of interest when applied to $52,000 produces a sum equal to interest at 15% per annum on the loan amount of $44,000.
[2] Chandler v. Kendrick, 108 Fla. 450, 146 So. 551, 552.
[3] The lenders used business stationery which carried the name Benann Mortgage Company, with the slogans, "First and Second Mortgages," and "To get a mortgage on the easy plan, the thing to do is to call Benann."