170 So.2d 302 (1964)
FIRST MORTGAGE CORPORATION OF VERO BEACH, a Florida corporation, Appellant,
v.
John W. STELLMON and Velma I. Stellmon, his wife, Appellees.
No. 4558.
District Court of Appeal of Florida. Second District.
December 9, 1964.
Rehearing Denied January 6, 1965.
*303 Charles F. Clark, and Stanley W. Rosenkranz, of Macfarlane, Ferguson, Allison & Kelly, Tampa, Elton H. Schwarz, Stuart, for appellant.
Charles A. Sullivan, Vero Beach, for appellees.
WILLSON, J.H., Associate Judge.
The appellees, John W. Stellmon and Velma I. Stellmon, his wife, executed and delivered to appellant, First Mortgage Corporation of Vero Beach, their promissory note in the sum of $20,320, dated August 25, 1961, and payable in 120 equal monthly installments of $167.65, with interest from maturity at the rate of 10% per annum until paid. The appellees received for their note the sum of $12,840.60, which included $140.60 in closing costs. The amount of the note was obtained by making a 5% add-on for the period of ten years, and adding the closing costs. It was stipulated by parties, that in event the note had run to maturity, the plaintiff would have received slightly less than 10% per annum interest. To secure the note the appellees mortgaged to appellant certain lands in Indian River County.
*304 The note contained the following acceleration clause:
"If any sum of money herein referred to be not promptly paid within fifteen days next after the same becomes due, then the entire sum mentioned herein, or the entire balance unpaid thereon, shall forthwith or thereafter, at the option of the holder, become due and payable. Two (2) years after date, the makers shall have the privilege of prepayment without penalty."
There was also an acceleration in the mortgage which reads as follows:
"If any sum of money herein referred to be not promptly paid within fifteen days next after the same becomes due, or if each and every the agreements, stipulations, conditions and covenants of said note and this mortgage, or either, are not fully performed, complied with and abided by, then the entire sum mentioned in said note, and this mortgage or the entire balance unpaid thereon, shall forthwith or thereafter, at the option of the mortgagee, become and be due and payable, anything in said note or herein to the contrary notwithstanding. Failure by the mortgagee to exercise any of the rights or options herein provided shall not constitute a waiver of any rights or options under said note or this mortgage accrued or thereafter accruing."
Default having been made in some of the monthly payments on the note, appellant instituted an action to foreclose the mortgage as to the defaulted payments, subject, however, to the remaining unmatured installments. The chancellor, in his final decree dated September 27, 1963, held that the acceleration clause in the note, without any provision for the elimination of unearned interest in the installments precipitated to maturity in the event of default, rendered the note civilly usurious. Appellant challenges the correctness of this decision.
The Courts of our sister states have held, for the most part, that an acceleration clause does not, of itself, render the contract usurious, even though the amount of the interest that may become due by reason of an acceleration exceeds the lawful rate, the excess interest being treated as a penalty that can neither be collected nor retained. N. 84 A.L.R. 1283. The Courts of this state have declined to follow the general rule with respect to the effect of an acceleration clause, and have adopted one which appears to be sui generis.
The reason generally assigned for the majority rule is that the borrower has it in his power to forestall the operation of the acceleration clause, and avoid the payment of the higher rate of interest, by discharging the debt when due. The answer to this is, of course, that unless the borrower has the means to discharge his debt when due, he does not have the power to do so. There is a full discussion of this subject in the dissent of Mr. Justice Buford to the first opinion in Benson v. First Trust & Savings Bank, 105 Fla. 135, 134 So. 493, 142 So. 887, 145 So. 182, and in Mr. Justice Terrell's dissent to the second opinion in that case.
The humanitarian purpose of the usury law is to protect the needy borrower by penalizing the unconscionable moneylender. Stubblefield v. Dunlap, 148 Fla. 401, 4 So.2d 519. The general rule substitutes commercial policy for the legislative intent. Maxwell v. Jacksonville Loan & Imp. Co., 45 Fla. 425, 34 So. 255. This conflict of the humanitarian spirit that lies behind the usury law with commercial policy has existed in Anglo-American society since at least the early part of the Middle Age, and is basically a contest between human values and material values.
In reaching his decision, in the case now before us, the chancellor relied, in part, on Maxwell, a factually similar but not identical case, the difference being a penalty of three per centum per month on delinquent installments. In that case the Supreme *305 Court declined to follow the majority rule, due to the language of the then existing usury statute  Chapter 4022, Laws of Florida, 1891  which made unlawful "any contract, contrivance or device whatever, whereby the debtor is required or obligated to pay a greater sum than the actual principal sum received, together with interest at the rate of ten per centum per annum." Although our present usury statute  Chapter 687, Fla. Stat., F.S.A.  is, in some respects, different from the Act of 1891, it still contains the language which furnished the basis for the Court's decision.
The decision in Maxwell is embodied in the following portion of the Court's opinion:
"In other words, under all the disguises of the language employed, the complainant was really lending or advancing money at the rate of 10 per cent. per annum, with additional liability to 10 per cent. damages for default of payment of any one of these monthly installments, and with liability 7 per cent. additional interest on them upon default, and with liability to have the whole debt mature if any three consecutive monthly payments were not made, with no provision in the contract for eliminating unearned interest, etc., when precipitated to maturity. The possible liability which the defendants incurred, if these defaults were made for 120 months, amounts to something like $75,000 on a loan or advance of $6,570. We think the answer, in bringing out clearly all these facts growing out of the original transaction, was responsive to the bill, and that the facts set up show contrivances and devices whereby the borrower was `obligated' to pay a greater sum than the actual principal sum received, together with interest at the rate of 10 per centum per annum." (Our emphasis.)
The import of this language is plain: the usurious nature of the contract depends upon the liability of the borrower under its terms, or, to put it another way, upon what may be demanded of the borrower, under the terms of the contract, rather than what is demanded from him. This is, of course, consonant with the well-settled principle that the usurious nature of a contract is to be determined as of the date of its inception. Carter v. Leon Loan and Finance Company, 108 Fla. 567, 146 So. 664; Shorr v. Skafte, Fla., 90 So.2d 604; Kay v. Amendola, Fla.App., 129 So.2d 170; Home Credit Company v. Brown, Fla., 148 So.2d 257, 55 Am.Jur. 387.
After the decision in Maxwell, a new usury statute  Chapter 5960, Laws of Florida, 1909  was enacted. As we have pointed out, this statute retained the language upon which the decision in Maxwell was based. It forbade interest in excess of ten per centum per annum, and provided that "any person * * * wilfully violating" this provision should "forfeit the entire interest so charged, or contracted to be charged or reserved." It also provided that "any person * * * who shall wilfully and knowingly charge or accept any sum of money greater than the sum of money loaned, and an additional sum of money equal to twenty-five per centum per annum upon the principal sum loaned" should "forfeit the entire sum, both the principal and interest." The charging of interest at such rate was made a misdemeanor, punishable by fine or imprisonment. The term "criminal usury" has its source in this provision.
With some changes, only one of which is relevant to the instant case, the Act of 1909 has been carried forward in the successive statutory revisions, and now appears as Sections 687.02, 687.03, 687.04, 687.06, 687.07, 687.08 and 687.09, Fla. Stat., F.S.A. These Sections, and their predecessors in the Revised General Statutes of 1920, and subsequent revisions, are, therefore, peculiarly subject to construction in pari materia. The change in the Act of 1909 to which we refer is *306 the introduction of scienter into the statute, an element that did not appear in the Act of 1891. The terms "wilfully" and "wilfully and knowingly" are, to all intents and purposes, synonymous, Lee Construction Corp. v. Newman, Fla.App., 143 So.2d 222; Fry v. Hubner, 35 Or. 184, 57 P. 420; Catlett v. Young, 143 Ill. 74, 32 N.E. 447; Galveston, H. & S.A. Ry. Co. v. Bowman, 25 S.W. 140 (Tex.Civ.App.), so that scienter is as much an element in civil usury as in criminal usury.
Subsequent to the enactment of Chapter 5960, Laws of Florida 1909, the question we are considering came before the Supreme Court in Benson v. First Trust & Savings Bank, supra. It is in this case that the present confusion as to the effect of an acceleration clause had its origin. The borrower had received $11,500 for his note of $14,000, the lender reserving a bonus of $2,500. The note bore interest at the rate of 8% per annum and 10% per annum on deferred payments. Default occurred in interest payments, and suits was filed to recover the principal sum of $14,000, and interest at the stipulated rate of 8%. The case was decided by an evenly divided Court on the second rehearing, the result being that the rule of the case, if any, is embodied in the Court's judgment on the first rehearing.
The first opinion in Benson, written by Mr. Justice Davis, while noting the decision in Maxwell, patently distinguishes it on the ground that the Act of 1909 requires that the lender must "wilfully and knowingly charge or accept" a sum of money that is greater than the sum of money loaned, and an additional sum equal to twenty-five per centum per annum, before the penalty of forfeiting both principal and interest can be applied; but the opinion ignores the effect of the equally significant language of the statute, which speaks of contracts whereunder the borrower is "required or obligated to pay" interest in excess of the lawful rate. The introduction of scienter into the usury statute is, undoubtedly, of major importance; however, it does not conflict in any respect with the language found significant in Maxwell. There appears to be no logical reason why the several sections of the statute should not be construed in pari materia, and the language of both be given full effect in determining whether a transaction is civilly or criminally usurious.
The rule proposed by Mr. Justice Davis in Benson finds expression in these words from his opinion:
"So when usury is alleged under the particular statute here involved, and such usury is established by proof showing an agreement to lend a certain sum for a given number of years for a certain sum of money as interest, which sum as interest, if the loan runs for its full term as agreed on, will not equal or exceed 25 per centum per annum, the legal consequences of such an arrangement must be tested by the results contemplated by the parties on the assumption that both lender and borrower will fully carry out their agreement rather than the special results which may follow, but are not necessarily certain to ensue, when the borrower breaches a covenant which accelerates the maturity of the principal at the option of the lender."[1]
Although this rule cannot be considered authoritative, in the light of the subsequent development of this case, it found its way into Smith v. Midcoast Investment Co., 127 Fla. 455, 173 So. 348, and so adds to the problem.
The controlling opinion in Benson was written by Mr. Justice Whitfield. The rule adumbrated in this opinion is that the existence and extent of usury in an obligation, *307 where the lender exercises an option to accelerate the entire amount remaining due thereunder, upon some default, is to be determined by the amounts due as of the date of the final decree. No authorities are cited and no reasons are given to support this rule. It is clearly a synthesis of the majority rule that acceleration clauses do not, of themselves, render an obligation usurious, and the minority rule, represented by Maxwell, that an acceleration clause may render an obligation usurious, if, by its terms, the borrower may be obligated to pay more than the legal rate of interest. It has much to commend it, but it left an unresolved antithesis in the principle that the usurious nature of the transaction is to be determined as of the date of its inception.
The facts in Smith are not fully delineated in the opinion, however, it appears that the lender reserved a substantial bonus. After quoting one of the syllabi in the first opinion in Benson, verbatim, Mr. Justice Buford said:
"So, we are committed to the rule that if a negotiable note and mortgage are executed payable over a period of years, and are given to secure a loan for an amount less than the principal expressed in the note and mortgage and the note and mortgage are allowed to run for the full period named therein, any bonus or deduction reserved by the lender at the time of making the loan will be prorated over the full term of the loan, but if the note and mortgage contained an acceleration clause of which the lender takes advantage, then the bonus or excess will be prorated only over the period of time for which the lender has elected to allow the obligation to run."
As Mr. Justice Drew has pointed out in a footnote to Home Credit Company v. Brown, Fla., 148 So.2d 257,[2] this couples the rule enunciated in the first judgment in Benson, with the rule actually applied in the second judgment. We think it is also fair to point out that it conflicts with the position taken in Mr. Justice Buford's dissenting opinion in Benson.
Since all the Justices concurred in the opinion in Smith, one must conclude that a consensus had finally been reached on the effect of the exercise of an option acceleration clause in determining the usurious character of an obligation. This conclusion finds some support in Ayvas v. Green, Fla., 57 So.2d 30.
In Ayvas the obligation, by reason of a reserved bonus was civilly usurious in its inception. The borrower defaulted in his payments on the loan, and the lender instituted an action to recover the sum actually advanced, and interest at the agreed rate of six per centum per annum, in accordance with an acceleration clause in the writing obligatory. Speaking through Mr. Justice Roberts, the Court said:
"Assuming that the findings of fact of the Master are correct, then the loan in the instant case, if allowed to run its full three years, would have carried an interest rate (including the $547.50 `bonus') of more than 10 per cent but less than 25 per cent per annum. It was thus civilly usurious at its inception, but not criminally so. And the fact that the note and mortgage contained an acceleration clause by which the entire amount of $2700 became due and payable upon default in any monthly payment does not, in our opinion, give rise to a conclusive presumption that the lender did `willfully and knowingly charge or accept any sum of money greater than the sum of money loaned, and an additional sum of money equal to twenty-five per cent per annum upon the principal sum loaned'. (The emphasis was supplied by the writer of the opinion.)
* * * * * *
"This case must, then, be decided as though the lender by taking advantage *308 of an acceleration clause seeks to recover the amount actually loaned under a contract civilly, but not criminally, usurious at its inception because of a bonus or deduction reserved by the lender at the time of making the loan, and where the amount of such bonus, although not sought to be recovered in the proceeding, would render the contract criminally usurious if pro-rated only over the four-month period for which the lender has elected to allow the obligation to run. We are mindful of the previous decision of this court in Smith v. Midcoast Inv. Co., 127 Fla. 455, 173 So. 348, 350, in which it was stated that `* * * if the note and mortgage contained an acceleration clause of which the lender takes advantage, then the bonus or excess will be prorated only over the period of time for which the lender has elected to allow the obligation to run'; but we are not persuaded that this rule should be applied to make criminally usurious that which was only civilly usurious in its inception and where the lender is not seeking to recover the full face value of the note, but only the amount actually loaned."
This is an implicit rejection of the rule in the second Benson opinion, and in the Smith opinion, that the existence of usury in an obligation, where the lender exercises an option to accelerate the entire amount due thereunder, upon some default, is to be determined by the amounts due on the date of the final decree, insofar as criminal usury is concerned, but it leaves the rule standing as to civil usury. This rejection of the Benson and Smith rule is apparently based upon the line of reasoning adopted by Mr. Justice Davis in the first Benson opinion, for it emphasizes the phrase "wilfully and knowingly" in the section on criminal usury. In Home Credit Company, as we shall see, Ayvas was reversed with respect to its bearing on criminal usury.
The chancellor in the Court below quoted excerpts from two paragraphs of Mr. Justice Drew's opinion in Brown. We quote them in full:
"The alternative holding in this case,[3] as already indicated, was that the notes became criminally usurious `when Home Credit sought to recover the full face value of the two notes.' (Emphasis supplied.) Petitioner contends that this conflicts with the pronouncement in our cases `that the usurious character of a contract must be determined as of the date of its inception.' The latter principle has been applied to require that a determination of usury be based upon a consideration of the total benefits or rights which could accrue to the lender under a literal construction of the terms of a contract fixed at its inception, independent of subsequent attempts to purge the contract of its usurious character. In its fundamental sense, however, the quoted principle contemplates also that a determination of usury shall be based upon a consideration of what amount the note on its face authorizes the obligee to demand, rather than upon which amount he actually demands or seeks to recover. We conclude that to attribute a decisive effect to the actual scope of an obligee's demands, as opposed to the amount which the contract purports to precipitate to maturity upon default and demand, would indeed collide with this guiding principle. The language of the Ayvas opinion does ascribe significance to the absence of excessive demands by the complainant, but the point cannot, we think, be given a controlling effect.
* * * * * *
"In any event, we think computations under the usury law must be based on a determination of the scope of acceleration rights which a note or contract purports to give a lender or holder and *309 not upon the sums actually claimed by him. This follows necessarily from the principle that the vice of usury is one which inheres in the parties' agreement itself. When a note upon its face vests in the holder, as in the instant case and in Ayvas, supra, an option upon default to accelerate maturity of the total obligation, including unearned interest, then the results of its exercise must be evaluated under the literal contract terms whether or not the complaint in fact seeks recovery of all such sums."[4]
Separated from its context, this appears to be a reversal of Ayvas, insofar as it applies to criminal usury. It also appears to be rejection of the rule in the second Benson opinion, and an implied approval of the rule in Maxwell.
Notwithstanding the language in the two paragraphs of the opinion in Home Credit Company, which we have just quoted, there are three other passages in the opinion that require a somewhat different conclusion. They read as follows:
"As above noted, the second alternative holding upon the pertinent point of law in this case was that the lender's institution of suit seeking to recover the face value of the notes operated to make the contract criminally usurious. Upon this critical point the Court thus decided that Home Credit's action constituted an exercise of the acceleration option so as to precipitate the obligation to maturity and require proration of the reserved interest over the period from the date of the original contract to the date when Home Credit instituted suit or `sought to recover' this entire face amount, resulting in an interest rate in excess of 25%.
"This method of computation clearly differs from that used in the Benson case, supra, where, in litigation also involving the effect of exercise of an option of acceleration upon the rate of interest attributable to a reserved sum, this Court found the date of the decree entered in such litigation to be the maturity date for purposes of interest rate computation. While such an obligation might logically be deemed mature upon demand by the lender at any time after default, we find no persuasive reason for abandoning the actual rule of the Benson case by which reserved interest is prorated over the period of time for which the lender has elected to allow the obligation to run, to the date when his right to payment is legally determined by court decree whenever suit has become necessary.
* * * * * *
"We hold, in sum, that the presence of the acceleration option contingent on default did not alone warrant a finding of usury in the inception of the transaction here involved, and that in testing the results of its exercise the reserved interest must be calculated as payment for the use of the actual outstanding principal sum until the acceleration option became effective by entry of a decree thereon on May 11, 1961." (Our emphasis.)
At first glance, these excerpts appear to contradict the preceding portions of the opinion, which we have quoted, in that it approves the controlling rule in Benson, and seems to approve the rule in Ayvas that an acceleration clause will not render an obligation criminally usurious. Such a conclusion would not be justified.
There were two notes involved in Home Credit Company. One was civilly but not criminally usurious, if it had run the full term of the contract. When subjected to the same test, the other note was neither civilly nor criminally usurious. Neither note was, therefore, criminally usurious at *310 its inception, unless made so by virtue of their acceleration provisions. We found both notes to be criminally usurious, either under the rule laid down in Shorr, or that announced in Ayvas. The Supreme Court affirmed our decision, but based its judgment upon the ruling decision in Benson, rather than upon those in Ayvas or Shorr.
Whatever may be the opinions expressed by the members of an Appellate Court, the judgment entered is the vital thing, Union Indemnity Co. v. Vetter, 107 Fla. 761, 143 So. 869; and the opinion must be construed in connection with the facts in the case. Bryan v. Coconut Grove Bank & Trust Co., 101 Fla. 947, 132 So. 481, 134 So. 229; Pearson v. Taylor, 159 Fla. 775, 32 So.2d 826. Read in the light of the facts and decision, the apparent contradiction in the opinion in Home Credit Company disappears.
Although Mr. Justice Drew recognizes the "doubtful authority of Benson," and its "anomalous * * * disregard of the general rule that the usurious character of a contract must be determined or determinable at its inception," he finds "no persuasive reason for abandoning the actual rule of the Benson case by which reserved interest is prorated over the period of time for which the lender has elected to allow the obligation to run, to the date when his right to payment is legally determined by court decree whenever suit has become necessary." The first of the two paragraphs quoted in the chancellor's decree is, then, simply a discussion and rejection of the rule in Ayvas that the existence and exercise of an acceleration clause in an obligation will never render it criminally usurious, and the second paragraph is no more than a restatement of the governing rule in Benson.
It is admitted that the obligation in the case under consideration, if it had run to maturity, would have carried slightly less than ten per centum interest per annum. The lender did not elect to exercise the option to accelerate the entire amount due, but sought only to foreclose upon the past due installments. Does the rule in Benson, as stated in Home Credit Company, have any application to these facts? While the declination of the appellee to exercise the acceleration option in the instant case, distinguishes it from the facts in Benson and Home Credit Company, in a material aspect, the rule may have its place in the answer.
We repeat what the Court, speaking through Mr. Justice Thomas, said in Shorr:

"We cannot agree that a contract usurious in its inception can be purged of its vices by mere delay in its enforcement." (Our emphasis.)
Declining to exercise the acceleration option, as we see it, is in the same category as delaying to enforce the obligation. In both instances it may be a device to avoid the penalties attendant upon usury.
The language used by Mr. Justice Drew, in Home Credit Company, in explicating the rule in Benson, is, in effect, a synthesis of this rule with the principle set forth in Shorr, viz., that a usurious obligation cannot be purged of its vice by the manner in which the holder seeks to enforce it. It may be sttaed thus: Computations under the usury law must be based on a determination of the scope of acceleration rights which a note or contract purports to give a lender or holder, as of the date of the final decree, and not upon the sums actually claimed by him, and the computation will be so made, even though the lender or holder delays to enforce his obligation, or declines to exercise his acceleration option.
The appellant had a right to demand "the entire balance unpaid" upon the note when it instituted its action to foreclose. If it had received this amount on the date of the final decree, the total interest payable under the contract, spread over the period from its inception to the date of the final decree, would have been criminally usurious. The fact that appellant declined to exercise its option to accelerate the obligation, and demand this amount, does not alter the result.
*311 Although the chancellor found that the obligation was only civilly usurious, when he applied the penalty for civil usury it resulted in extinguishing the entire debt. The same result would have been attained had he found the obligation criminally usurious. There being no cross-appeal by appellees, we simply affirm his decree.
ALLEN, Acting C.J., and ANDREWS, J., concur.
NOTES
[1] The logic of this rule is sharply challenged in the dissenting opinion of Mr. Justice Buford in Benson, and also in Mr. Justice Hocker's opinion in Maxwell.
[2] Footnote 2, page 258.
[3] Our case, viz., Brown v. Home Credit Company, Fla.App., 137 So.2d 887.
[4] See also Shorr v. Skafte, Fla., 90 So.2d 604, where the Court said: "We cannot agree that a contract usurious in its inception can be purged of its vices by mere delay in enforcement."