VILLANTI, Judge.
 

 Susan Velletri appeals the final judgment permitting Thomas W. Dixon to foreclose on a mortgage that secured a promissory note that Velletri claimed was criminally usurious. Because the calculations required by the plain language of section 687.03, Florida Statutes (2006), establish that the interest charged on the note was criminally usurious at the inception of the ti’ansaction, the note and its corresponding mortgage were unenforceable as a matter of law. Accordingly, we reverse and remand for entry of judgment in favor of Velletri.
 

 Neither party provided a transcript of the bench trial as part of the record on appeal, but each contends that this court can determine the merits of this case without the transcript because the issues raised are limited to questions of law and the application of simple math.
 
 [1]
 
 The record we have shows that Velletri obtained a loan with a face amount of $250,000 from Providence Mortgage Corporation, which was a mortgage servicing company acting on behalf of Dixon, a private lender. The loan proceeds were to be used to purchase and renovate a commercial property in St. Petersburg. The loan was an “interest only” loan, and the loan documents indicated that Velletri would make twenty-three “interest only” payments of $3150 followed by a final balloon payment of $253,150. The stated interest rate of the loan was 15 percent.
 

 According to the closing documents, Providence withheld $12,500 from the loan proceeds as an “origination fee.” It also
 
 *189
 
 withheld $513.70 as “interest.” Further, to ensure that the proposed renovations were actually performed, Providence also withheld an additional $65,000 at closing as “construction loan funds,” and it placed those funds into an escrow account from which Velletri could apply for reimbursement as the renovations progressed. However, despite the withholding of sums totaling $78,013.70 from the loan proceeds at closing, the $3150 “interest only” payment was calculated based on a 15 percent interest rate on the full $250,000 face amount of the loan. Providence assigned the note and mortgage to Dixon at closing.
 

 Velletri applied for and received various disbursements from the escrow account for a period of time after closing. When she fell behind on payments at one point, Dixon sent a demand letter requiring Velletri to pay the full $3150 monthly “interest only” payments, as well as late fees, to bring her account current even though Dixon still held significant sums in escrow at that time. Velletri brought the loan current, but subsequently fell behind again in her payments. At that point, Dixon filed his foreclosure action against the property.
 

 Velletri defended against the foreclosure action by raising the defense of usury. Velletri contended that the loan was criminally usurious from its inception and that therefore the note and mortgage were unenforceable. Dixon argued that the loan was not usurious because he had not received the funds withheld at closing and because he had no usurious intent. After a bench trial, the trial court specifically found that Dixon had a usurious intent; however, it found that the loan was only civilly and not criminally usurious. Thus, the court permitted Dixon to foreclose on the property, but he was required to forfeit double the interest he had collected as a penalty pursuant to section 687.04. Vel-letri appealed the final judgment, contending that the trial court erred by finding that the loan was only civilly usurious rather than criminally usurious. Dixon cross-appealed, contending that the trial court erred by finding that the loan was usurious at all.
 

 Sections 687.03, 687.04, and 687.071 proide statutory causes of action which allow a borrower to seek affirmative relief against a lender who has made a usurious loan. Civil usury involves loans of $500,000 or less with an interest rate greater than 18 percent and less than 25 percent.
 
 See
 
 § 687.03(1). Criminal usury involves any loan amount with an interest rate greater than 25 percent.
 
 See
 
 § 687.071(2).
 
 [2]
 
 The penalties for civil usury include forfeiture of double the interest actually charged and collected.
 
 See
 
 § 687.04. The civil penalty for criminal usury is significantly greater: forfeiture of the right to collect the debt at all.
 
 See
 
 § 687.071(7).
 

 Whether a transaction is either civilly or criminally usurious is determined at the inception of the loan.
 
 See Home Credit Co. v. Brown,
 
 148 So.2d 257, 259 (Fla.1962);
 
 Oregrund Ltd. P’ship v. Shelve,
 
 873 So.2d 451, 458-59 (Fla. 5th DCA 2004). If a borrower is required to pay a bonus or other consideration at the inception of the loan as an inducement to the lender to make the loan, such an inducement may be considered interest and can render an otherwise proper loan usurious.
 
 See Cooper v. Rothman,
 
 63 Fla. 394, 57 So. 985, 988 (1912);
 
 Jersey Palm-Gross, Inc. v. Paper,
 
 639 So.2d 664, 667
 
 *190
 
 (Fla. 4th DCA 1994),
 
 aff'd,
 
 658 So.2d 531 (Fla.1995). Similarly, if a lender retains a substantial portion of the loan proceeds without allowing a corresponding abatement of interest on the amount retained, that retention effectively increases the interest charged on the amounts actually advanced to the borrower, which can render an otherwise proper loan usurious.
 
 See Mindlin v. Davis,
 
 74 So.2d 789, 793 (Fla.1954).
 

 Section 687.03(3) sets forth the methodology to be used to determine whether a loan is usurious when some of the loan proceeds have been retained by the lender at closing. The Florida Supreme Court applied this statutory methodology in
 
 St. Petersburg Bank & Trust Co. v. Hamm,
 
 414 So.2d 1071 (Fla.1982), and specifically rejected any alternative means of calculating the effective interest rate of a loan. In
 
 Hamm,
 
 the face amount of the loan was $290,000, the stated interest rate was 9 percent, and the lender withheld $5800 from the loan proceeds at closing.
 
 Id.
 
 at 1073. In determining whether the loan was usurious, the court used the following calculations:
 

 We hold that section 687.03(3) is clear on its face and should be applied in the following manner:
 

 1. The spreading of any such advance or forbearance for the purpose of computing the rate of interest shall be calculated by first computing the advance or forbearance as a percentage of the total stated amount of the loan.
 

 a) Advance of $5,800.00.
 

 b) $5,800.00 -r $290,000.00 = 2% of total stated amount.
 

 2. This percentage rate shall then be divided by the number of years, and fractions thereof, of the loan according to its stated maturity date, without regard to early maturity in the event of default.
 

 a) Two year term.
 

 b) 2% spread over two years is 1% annual percentage rate.
 

 3.The resulting annual percentage rate shall then be added to the stated annual percentage rate of interest to produce the effective rate of interest for purposes of this chapter.
 

 a) The resulting annual percentage rate from paragraph 2(b) above is 1% per year.
 

 b) The stated annual rate on the note is 9% per year.
 

 c) The effective rate of interest is 9% +
 

 1% = 10%.
 

 Id.
 
 (citations omitted). Thus, under the statute in effect at the time
 
 Hamm
 
 was decided, the loan was not usurious because the effective interest rate did not exceed 10 percent.
 
 Id.
 

 The provisions of section 687.03(3) concerning the calculation of the effective interest rate have not changed since
 
 Hamm
 
 was decided, and thus the calculations that must be used in this case are the same. Here, the undisputed facts show that the face amount of the loan was $250,000 and the stated interest rate was 15 percent. The amounts withheld at closing were $12,500 for an “origination fee” that the court found was actually additional interest; $513.70 for interest; and $65,000 as “construction loan funds” placed into escrow, for a total of $78,013.70 withheld at closing. The
 
 Hamm
 
 calculations using these amounts are as follows:
 

 1. a. Advance of $78,013.70.
 

 b. $78,013.70 -r- $250,000 = 31.2% of total stated amount.
 

 2. a. Two year term.
 

 b. 31.2% spread over two years is 15.1% annual percentage rate.
 

 3. a. The resulting APR from 2(b) above is 15.1% per year.
 

 
 *191
 
 b. The stated annual rate on the note is 15% per year.
 

 c. The effective rate of interest is 15% + 15.1% = 30.1%.
 

 Since this effective percentage rate is greater than 25 percent, the loan at issue here was criminally usurious at its inception and therefore the note is unenforceable.
 

 It appears from our record that the trial court in this case examined the transaction on the date of foreclosure rather than the date of the loan’s inception. Even if this were correct, the loan is still criminally usurious when properly calculated. The trial court’s calculations were based on the following:
 

 $ 12,500.00 ’’origination fee”
 

 $ 513.70 interest charged at closing
 

 $ 25,000.00 interest actually paid
 

 $ 2,075.55 default interest actually paid
 

 $ 40,089.25 total interest paid
 

 $250,000.00 stated amount of loan $ 28,328.58 less amount retained in escrow
 

 $221,671.42 loan proceeds actually received
 

 $40,089.25/$221,671.42 = 18.08% interest rate charged
 

 However, loan proceeds retained by the lender are considered additional interest,
 
 see Brown v. Home Credit Co.,
 
 137 So.2d 887, 892 (Fla. 2d DCA 1962), and do not reduce the “stated amount of the loan” identified in section 687.03(3),
 
 see Hamm,
 
 414 So.2d at 1073. Thus, the proper calculation based on the facts when the foreclosure action was filed should have been:
 

 $ 12,500.00 ’’origination fee”
 

 $ 513.70 interest charged at closing
 

 $ 25,000.00 interest actually paid by Velletri
 

 $ 2,075.55 default interest paid by Velletri
 

 $ 28,328.58 proceeds retained in escrow
 

 $ 68,417.83 total monies received by Dixon
 

 $250,000.00 stated amount of loan
 

 $68,417.83/$250,000 = 27.37% interest rate charged
 

 Thus, even under the faulty premise that usury should be determined at the time of foreclosure, the interest rate actually charged by Dixon was criminally usurious, and the trial court’s finding to the contrary must be reversed.
 

 We note that this conclusion does not render all construction loans which hold certain funds in escrow usurious. Rather, as noted in
 
 Williamson v. Clark,
 
 120 So.2d 637, 639 (Fla. 2d DCA 1960), the normal procedure when a portion of the loan proceeds are held in escrow to be later advanced for construction is for the lender to charge interest
 
 only on the amounts already advanced,
 
 not on the entire stated amount of the note. Thus, interest is not charged on funds not readily available to the borrower, and the loan does not become usurious. Here, however, Dixon charged Velletri monthly interest calculated at 15 percent of the entire $250,000, even though a substantial portion of that sum was never available to her. By charging interest on amounts never received by Velletri, Dixon charged and collected interest at a usurious rate.
 

 On cross-appeal, Dixon argues that the trial court improperly included the $12,500 “origination fee” as interest received by him because he never actually received this fee. He argues that the court found that the fee was received by Providence and that receipt of fees by a third party cannot be charged against the lender as interest, citing
 
 Cutri Enterprises, Inc. v. Pan American Bank of Miami,
 
 115 So.2d 592 (Fla. 2d DCA 1959). While we agree with this general statement of the law, we find that
 
 Cutri
 
 is not controlling on this issue in this case.
 

 In
 
 Cutri,
 
 the facts established that J.I. Kislak Mortgage was originally Cutri’s agent and was assisting Cutri in obtaining financing for a subdivision development. Cutri paid J.I. Kislak certain funds in exchange for J.I. Kislak assisting it, as Cu-tri’s agent, in obtaining a loan from Pan American Bank of Miami. The question was whether payment of a percentage of the loan proceeds to J.I. Kislak rendered
 
 *192
 
 the loans from Pan American Bank usurious. In concluding that it did not, the court noted that bona fide payments to third parties for services provided in closing the loan transaction cannot render a loan usurious.
 
 Id.
 
 at 595.
 

 The situation in this case is factually distinguishable. Here, there is no evidence that Providence was ever acting as Velletri’s agent in obtaining the loan. Nothing in the record before this court shows that Velletri agreed to pay a brokerage fee to Providence to secure financing. Thus, whether the $12,500 “origination fee” was a bona fide payment to a third party for services provided in closing the loan was a question of fact to be determined based on the record as a whole.
 
 See Dixon v. Sharp,
 
 276 So.2d 817, 820-21 (Fla.1973) (holding that in the case of either criminal or civil usury, the lender’s willfulness to charge an excessive interest rate is determined by considering all of the circumstances surrounding the transaction). The trial court concluded that this fee was not a bona fide payment to a third party. On this point, absent a transcript of the bench trial this court has no basis to revisit this factual finding and exclude this amount from the interest found to have been received by Dixon.
 

 Having determined that the note was criminally usurious at its inception, we must next consider what remedy is proper. Generally, a debt that is criminally usurious at its inception is not enforceable.
 
 See
 
 § 687.071(7) (“No extension of credit made in violation of any of the provisions of this section shall be an enforceable debt in the courts of this state.”);
 
 Brown,
 
 137 So.2d at 892 (“[I]f the interest charged exceeds twenty-five percent per annum the lender shall forfeit the entire indebtedness, both principal and interest.”). However, Velle-tri claims she is entitled to more than that. She contends that she should be entitled to both cancellation of the note under section 687.071(7) and an award of double the interest paid under section 687.04—essen-tially a combination of the remedies for both civil and criminal usury. But such a remedy would be improper.
 

 When a debt is criminally usurious, the remedy is cancellation of the debt itself and a return of any amounts paid. There is no authority for cumulating the penalties for both civil and criminal usury, and, in fact, the authority is to the contrary.
 
 See Rosenblum v. Hart,
 
 95 So.2d 18, 19-20 (Fla.1957) (noting that sections 687.04 and 687.071 recognize and define different degrees of usury and provide distinct and separate penalties which are not cumulative);
 
 Brown,
 
 137 So.2d at 893 (same);
 
 Gordon v. W. Fla. Enters, of Pensacola, Inc.,
 
 177 So.2d 859, 862 (Fla. 1st DCA 1965) (same);
 
 Coral Gables First Nat’l Bank v. Constructors of Fla., Inc.,
 
 119 So.2d 741, 748-49 (Fla. 3d DCA 1960) (same). Contrary to Velletri’s assertions, no court has held that the remedies provided in sections 687.04 and 687.071(7) are cumulative of each other. Therefore, we reject Velletri’s suggestion that she is entitled to both cancellation of the debt and payment of double the interest she paid. Instead, on remand, the trial court should enter a judgment in favor of Velletri on the foreclosure action and award her a judgment in the amount the evidence establishes that she actually paid Dixon.
 

 Reversed and remanded with directions.
 

 CASANUEVA, C.J., and SILBERMAN, J., Concur.
 

 [1]
 

 . While we agree that the issue raised on direct appeal can be decided without reference to the transcript of the proceedings at the bench trial, as will be discussed below, the issue raised on cross-appeal does implicate questions of fact.
 

 [2]
 

 . A loan greater than $500,000 with an interest rate greater than 18 percent but less than 25 percent is not usurious.
 
 See
 
 § 687.03(1).